Hildred **WAGNER**

v.

**ELIZABETHTON CITY BOARD OF EDUCATION et al.**

Supreme Court of Tennessee.

June 18, 1973.

Rondal B. Cole, Elizabethton, for defendants-appellants.

George F. Dugger, Sr., Elizabethton, for plaintiff-appellee.

## OPINION

McCANLESS, Justice.

The plaintiff, Hildred Wagner, recovered from the defendant Elizabethton City Board of Education $7,910.00 together with interest from the date of the decree. The Board appealed and assigned errors.

The plaintiff had taught thirty-nine years in the Elizabethton High School. During the first thirty-seven years of this period her employment had been by the Carter County Board of Education but during the last two years, after June of 1969, it had been by the defendant Elizabethton City Board of Education who had assumed the operation and control of the school.

The plaintiff contends that at the April, 1971, meeting of the defendant City Board she was reelected as a teacher in the high school but that on August 3, 1971, the Board wrongfully and in violation of her rights, discharged her from her position and refused to allow her to assume her duties as teacher.

The plaintiff insists that the defendant City Board was under contract with her under the terms of Section 49–1306, T.C.A., providing that teachers in service and under control of the public and high schools of Tennessee shall continue in such service until they have received written notice from the board of education of their dismissal or failure of reelection at least thirty days before the school term ends. She says that she was not notified of her dismissal until a conversation she had with an employee in the office of the Superintendent of Schools on August 3, 1971, and that the defendant City Board had refused to pay her her salary amounting to $7,910.-00 for which she sues.

The plaintiff in her complaint recites that her qualifications are: (1) that she has a bachelor's degree from Carson-Newman College, an accredited four year college; (2) that she holds a permanent professional high school certificate from the Tennessee Department of Education; (3) that she had permanent tenure in the Elizabethton school system; and (4) that she had been reemployed by the defendant City Board of Education after her probationary period.

The contract entered into and executed by the appropriate officials of Carter County and of the City of Elizabethton in which is set forth the terms of the transfer of the Elizabethton High School from the county to the city, contains this language:

"The City of Elizabethton and the City Board of Education agrees to accept for employment any teachers in the Carter County Educational System affected by this transfer, and afford them the same tenure status that they have in the Carter County System; further to acknowledge the accrued sick leave for each teacher so affected, and each teacher is guaranteed employment in the Elizabethton School System, it being encumbent upon these teachers to meet the employment standard required for all teachers in the City Educational District; and being understood, that the employment standards required are as follows: that said teacher must have at least a B.S. or B.A. degree; that said teachers will be placed in their areas of certification; that holders of the B.S. or B.A. degree will earn at least six (6) hours of resident college credit every five (5) years; that said teachers holding the master's degree will earn six (6) hours of resident credit and travel within a five (5) year period; be it further understood that said teachers who have not earned six (6) hours within the past five years will be given two (2) years to complete the required schooling and where state and federal grants are not given that the Elizabethton City Board of Education will pay the tuition for the required schooling."

The plaintiff did not acquire six hours of college credit. The City Board furnished her a form of questionnaire which bears date of March 19, 1971, and includes, among other things, this language:

"5. Additional degree _____ or hours earned 6 before opening date of school."

The defendant City Board contends that this provision of the questionnaire constituted a promise to acquire the six hours of credit before the opening of school and that her failure to do so violated the terms of her contract and justified the defendant Board in its refusal to honor her election as a teacher. The Board, however, offered no proof that the plaintiff's election was on condition that she acquire the six hours of credit.

The Board insists that the refusal to allow the plaintiff to teach during the 1971-72 school year was a suspension for insubordination for failure to acquire the six hours of college credit before the beginning of the school year. However, no notice in writing of charges against the plaintiff was given her by the Superintendent as required by Section 49-1415, T.C.A.

The Elizabethton City Board of Education reelected the plaintiff to her former position as teacher in the High School at the April, 1971, meeting. She was not given notice at least thirty days prior to the close of the school term of her dismissal or failure of reelection as required by Section 49-1306 T.C.A. On August 3, 1971, an employee of the Superintendent, learning that plaintiff had not acquired the hours of college credit, informed her that she would not be allowed to sign her contract. On August 17, 1971, the Board elected her successor, a person who had neither taught nor attended school for twenty-five years.

It appears from the record that on May 18, 1971, the principal of the high school wrote the Board of Education that there were two teachers in his school who were due to retire after one more year's teaching; that both were due, according to the

Board's policy, to earn six quarter hours before the commencement of the 1971-72 school term. He inquired whether, in view of their long service and the short time they would teach after earning the additional hours, the Board would allow the policy to be waived as to them. The Board replied that because of the involvement by contract between the Carter County Board of Education and the Elizabethton Board of Education the Board had voted that they could not waive the requirement at that time. The letter contained this final sentence:

"The members did, however, feel that the policy should be reviewed and consideration be given to reducing the college credit requirement of persons 63 and 64 years of age."

The plaintiff received a copy of this letter.

Other facts were both alleged and proved by the parties, but those recited above, and which are not controverted, are determinative of the issues presented. The Chancellor filed a memorandum opinion in which he discussed the facts in detail and decided the issues in the plaintiff's favor and against the defendant City Board.

The Board assigned as error the holdings of the Chancellor that (1) the Board did not have the right to require the plaintiff to obtain six hours of college credit before entering upon the duties as a teacher for the school year 1971-72; (2) that the Board breached its contract with the plaintiff under the continuing contract law of the state; and (3) that she was entitled to notice that she was not employed for the school year 1971-72 under the teacher's tenure law.

The General Assembly, effective May 17, 1971, enacted Chapter 254 of the Public Acts of 1971, which has been carried into the Code as Section 49-1316. The Act, as codified, includes the following:

"The change in the government structure of a school system or institution

through the process of annexation, unification, consolidation, abolition, reorganization, or transfer of the control and operation of a school system or institution to a different type governmental structure, organization, or administration, shall not impair, interrupt, or diminish the rights and privileges of a then existing teacher and such rights and privileges shall continue without impairment, interruption or diminution.

"If the teacher becomes the employee of another school system or institution as a result of a change in the governmental structure, then the rights and privileges of such a teacher shall continue without impairment, interruption, or diminution as obligations of the new government, organization or administration.

"The term 'rights and privileges' as used herein shall include, but not be limited to, salary, pension or retirement benefits, sick leave accumulation, tenure status and contract rights, whether granted by statute, private act, or governmental charter."

This Section, in so far as it affects the teachers of Elizabethton High School, guaranteed that the transfer of the control and operation of the school should not impair, interrupt, or diminish their rights and privileges, including their tenure status.

■ The teacher's tenure law and Section 49–1316, T.C.A., are statutes enacted in furtherance of the State's police power, their purpose being to insure the welfare of the people. McKesson & Robbins, Inc., et al. v. Government Employees Department Store, Inc., et al., 211 Tenn. 494, 365 S.W.2d 890 [1963]. The Court in that case said:

"Police power embraces regulations designed to promote public convenience or general welfare and not merely those in interest of public health, safety and morals. Nashville C. & St. L. Ry. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79

L.Ed. 949. This police power of the Legislature embraces all matters reasonably deemed necessary or expedient for the safety, health, morals, comfort, domestic peace, private happiness, and welfare of the people. Phillips et al. v. State, 202 Tenn. 402, 304 S.W.2d 614."

The statute insured that no right of a teacher in Elizabethton High School should be diminished by reason of the transfer of its control and operation from the county system to the city system. The circumstance that it conflicts in its effect with the provisions of the contract of June, 1969, under which the control and operation of the school was transferred is of no legal significance. This statute, enacted in furtherance of the police power of the state, may be given retrospective effect in so far as it guarantees the teachers all the rights and privileges they enjoyed under the county system at the time of the transfer. Dark Tobacco Growers' Co-op Ass'n v. Dunn, 150 Tenn. 614, 266 S.W. 308 [1924].

■ It is contended by the Elizabethton City Board that the plaintiff was suspended from her teaching position for insubordination because of her failure to acquire six college hours of credit before the beginning of the school year. It must be observed that the Board gave the plaintiff no notice whatever of the charge of insubordination and no opportunity to be heard in defense of the charge. She was entitled to notice and a hearing. The purpose of the Teachers Tenure Act is to protect teachers from unjust dismissal by the arbitrary action of boards of education such as the dismissal or suspension of the plaintiff in this case. Shannon v. Board of Education, 199 Tenn. 250, 286 S.W.2d 571 [1955].

■ It is unnecessary that we decide whether the Board had the right to require the plaintiff to obtain six hours of college credit before entering upon her duties as a teacher during the school year 1971–72. Assuming that it had such right, it asserted it unlawfully by discharging the plaintiff, a

teacher with permanent tenure without notice and without a hearing. McCoy v. McConnell, 224 Tenn. 677, 461 S.W.2d 948 [1970]. We overrule the Board's first assignment of error.

We hold that by electing the plaintiff at its April, 1971, meeting the Board continued in effect the existing contractual relationship under the provisions of Section 49–1306, T.C.A. The circumstance that the parties did not execute a contract for the year 1971–72 is immaterial. We overrule the Board's second assignment of error.

The Chancellor did not commit error in holding that the plaintiff was entitled to notice of any charges against her. This holding was not error and the plaintiff was entitled to notice. McCoy v. McConnell, supra. We overrule the Board's third assignment of error.

We affirm the Chancellor's decree and remand the case to the Chancery Court for such action as may be required for the enforcement of the decree.

DYER, C. J., CHATTIN and HUMPHREYS, JJ., and WILSON, Special Justice, concur.