# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 8, 2005 Session

## THOMAS SALLEE  v.  TYLER BARRETT

**Appeal by permission from the Court of Appeals, Middle Section**
**Circuit Court for Montgomery County**
**No. 50300248     Hon. Ross H. Hicks, Judge**

---

**No. M2003-01893-SC-R11-CV - Filed September 13, 2005**

---

This appeal arises from a claim for negligent infliction of emotional distress. The defendant, a police officer, accidently discharged his gun while standing behind the plaintiff, startling the plaintiff. The trial court granted the defendant's motion to dismiss for failure to state a claim, concluding that the defendant was immune from suit pursuant to the Governmental Tort Liability Act, Tennessee Code Annotated section 29-20-310(b) (2000). The trial court also denied the plaintiff's motion to amend his complaint to add the City of Clarksville as a defendant. The Court of Appeals reversed, finding that section 29-20-205(2), which retained immunity for governmental entities for the "infliction of mental anguish"[1] caused by its employee applied to both negligent, as well as intentional infliction of mental anguish. We reverse the Court of Appeals and reinstate the trial court's order granting the motion to dismiss in favor of the defendant. With regard to the plaintiff's motion to amend his complaint, we find that the trial court did not abuse its discretion in denying that motion, as the requirements of Tennessee Rule of Civil Procedure 15.03 were not met.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals is Reversed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and JANICE M. HOLDER, JJ., joined. ADOLPHO A. BIRCH, Jr., J., not participating.

David William Haines, Jr., Clarksville, Tennessee, for the appellant, Tyler Barrett.

Phillip Leon Davidson, Nashville, Tennessee, for the appellee, Thomas Sallee.

James Russell Farrar and Mary Byrd Ferrara, Nashville, Tennessee, for the Amicus Curiae, Tennessee Municipal League Risk Management Pool.

---

[1] The terms "infliction of mental anguish" and "infliction of emotional distress" are used interchangeably throughout this opinion.

# OPINION

## I. Factual Background

On April 3, 2002, the plaintiff, Thomas Sallee ("Sallee"), was standing at the counter of an Amoco station located at 601 Riverside Drive in Clarksville, Tennessee. The defendant, Tyler Barrett ("Barrett"), a police officer employed by the City of Clarksville, was also inside the Amoco station, standing several feet behind Sallee. While Sallee was talking to the station's clerk, Barrett placed his hand on his weapon, which was located in its holster. The weapon discharged suddenly and unexpectedly, and the bullet struck the floor near Barrett's right foot.

Sallee filed a complaint against Barrett for negligent infliction of emotional distress. Sallee alleged that Barrett was negligent in failing to maintain his weapon in its holster in such a safe, secure manner as to not have it discharge in public; that the gun's discharge was "loud, startling and unexpected;" and that as a direct and proximate cause of Barrett's negligence, Sallee suffered severe and permanent emotional distress and post-traumatic stress disorder. Sallee did not file suit against Barrett's employer, the City of Clarksville.

Barrett filed a motion to dismiss for failure to state a claim pursuant to Tennessee Rule of Civil Procedure 12.02(6). Barrett argued that he was immune from suit pursuant to the provisions of the Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated sections 29-20-101 et seq. It was his position that the City of Clarksville was the proper party because governmental entities are subject to liability for the negligent acts of its employees, and there is no exception for negligent infliction of emotional distress. Sallee countered that one of the exceptions to the general waiver of immunity for negligent acts is for "infliction of mental anguish," Tennessee Code Annotated 29-20-205(2) (2000), and this includes both negligent and intentional infliction of emotional distress. As such, the City of Clarksville would be immune from suit for negligent infliction of emotional distress caused by its employees, making Barrett the proper party to this lawsuit. Sallee also filed a motion to amend his complaint to add the City of Clarksville as a defendant.

Barrett's motion to dismiss was heard by the trial court on June 5, 2003. The court granted the motion to dismiss by order dated June 30, 2003. The trial court concluded that under the provisions of the GTLA, Barrett was immune from suit. Specifically, the court cited to Tennessee Code Annotated section 29-20-205, which removes governmental immunity for injuries proximately caused by a negligent act or omission of its employee. Under Tennessee Code Annotated section 29-20-310, if the immunity of a governmental entity is removed, the employee is immune from suit. The court also held that Sallee's request to amend his complaint to substitute the City of Clarksville as a party defendant would be "futile" because such an amendment would not relate back to the original date of the filing of Sallee's complaint.

The Court of Appeals reversed the judgment of the trial court, holding that:

[T]he legislature intended to include both negligent and intentional infliction of emotional distress in this exception to the removal of a governmental entity's immunity. Since the City of Clarksville is immune from suit for the negligent infliction of emotional distress arising from its employee's negligent act, under T.C.A. § 29-20-310(b), Barrett is the proper Defendant in this suit.

Thus, the Court of Appeals concluded that the trial court erred in dismissing the case based on Barrett's immunity. The Court of Appeals did not address the issue of whether Sallee should have been allowed to amend his complaint to add the City of Clarksville as a defendant because this issue was pretermitted by its decision to reverse the trial court's grant of Barrett's motion to dismiss.

We granted review to determine whether governmental entities are immune from liability for negligent infliction of emotional distress.

## II. Standard of Review

The construction of statutes and application of the law to the facts of a case are questions of law. See State v. Jennings, 130 S.W.3d 43, 45 (Tenn. 2004); State v. Jackson, 60 S.W.3d 738, 742 (Tenn. 2001). Accordingly, the standard of appellate review is de novo without any presumption of correctness given to the lower courts' conclusions of law. Jennings, 130 S.W.3d at 45; Jackson, 60 S.W.3d at 742.

The grant or denial of a motion to amend is within the sound discretion of the trial court, and the court's action will be reversed only for an abuse of discretion. See Doyle v. Frost, 49 S.W.3d 853, 856 (Tenn. 2001); Henderson v. Bush Bros. & Co., 868 S.W.2d 236, 237-38 (Tenn. 1993).

## III. Analysis

### A. Barrett's Motion to Dismiss

The primary issue in this case is whether "infliction of mental anguish," as used in Tennessee Code Annotated section 29-20-205(2) (2000), encompasses both the tort of negligent infliction of emotional distress as well as the tort of intentional infliction of emotional distress. If both torts are included in the statutory language, then the Court of Appeals correctly concluded that Barrett was the proper party defendant. On the other hand, if the words as used in the statute include only the tort of intentional infliction of emotional distress, then the trial court was correct in holding that the City of Clarksville, and not officer Barrett, was the proper party defendant.

We begin our analysis by noting that historically, governmental entities have been held immune from suit absent their express waiver of that immunity. See Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 79 (Tenn. 2001). In 1973, the General Assembly enacted the Tennessee Governmental Tort Liability Act (GTLA), which waived in part the immunity previously afforded to governmental entities. 1973 Tenn. Pub. Acts ch 345, *codified at* Tenn. Code Ann. § 29-20-101

et seq. (2000). Specifically, section 29-20-205 removes immunity "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ." Where immunity has been waived, such as for the negligent acts of governmental employees, the governmental entity is the proper party-defendant. In such circumstances, the employee is, by statute, immune from suit. Tenn. Code Ann. § 29-20-310(b) (2000).

While generally waiving governmental immunity for the negligent acts committed by employees of governmental entities, Tennessee Code Annotated section 29-20-205(2) (2000) specifically preserves immunity from claims arising out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, *infliction of mental anguish*, invasion of right of privacy, or civil rights." (Emphasis added.) Therefore, our task in this case is to determine whether the legislature intended to preserve immunity for claims arising out of negligent infliction of emotional distress as well as the intentional infliction of emotional distress.

To assist in our interpretation of the statute, it is helpful to review the historical underpinnings and emergence of claims for negligent infliction of emotional distress. Historically, courts denied recovery where the defendant's negligence caused mental disturbance without accompanying physical injury or physical consequences, or without other independent basis for tort liability. See, e.g., Laxton v. Orkin Exterminating Co., 639 S.W.2d 431 (Tenn. 1982); Medlin v. Allied Inv. Co., 398 S.W.2d 270 (Tenn. 1966) *abrogated by* Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996); Bowers v. Colonial Stages Interstate Transit, Inc., 43 S.W.2d 497 (Tenn. 1931) *abrogated by* Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996); see also Restatement (Second) of Torts § 436 cmt. c (1965).

Over the years, this Court has carved out exceptions to the general rule, allowing recovery for mental disturbance alone in certain limited circumstances. For example, in Hill v. Travelers' Ins. Co., 294 S.W. 1097 (Tenn. 1927), the plaintiff was allowed to recover for mental damages occasioned by the defendants' mutilation of her husband's dead body during an autopsy, notwithstanding the fact that the plaintiff had not suffered either a contemporaneous physical injury or exhibited physical symptoms of her alleged mental injuries. Hill, 294 S.W. at 1099; see also Wadsworth v. W. Union Tel. Co., 8 S.W. 574 (Tenn. 1888) (establishing a similar exception for the negligent failure to deliver a telegraph regarding imminent death of plaintiff's brother, thus preventing her from sitting by his bedside when he died).

The "physical manifestation" rule, however, was not fully rejected until our decision in Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996). In Camper, we held that negligent infliction of emotional distress must be analyzed under the general negligence approach, requiring the five elements of general negligence: duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause. Camper, 915 S.W.2d at 446. Proof of an accompanying or consequential physical injury was no longer required. Id.

At the time the GTLA was enacted in 1973, the physical manifestation rule was still in effect.

In almost all circumstances, the tort of negligent infliction of emotional distress then still required proof of physical injury or must accompany another independent basis for tort liability. Thus, negligent infliction of emotional distress was not yet recognized fully as its own stand-alone tort in the same way that it now is following our decision in Camper.

On the other hand, the tort of intentional infliction of emotional distress was fully recognized by this Court prior to 1973. Medlin v. Allied Inv. Co., 398 S.W.2d 270 (Tenn. 1966). In Medlin, this Court held that in the context of intentional conduct, a plaintiff does have a right to emotional tranquility that, if violated, gives rise to an independent cause of action for intentional infliction of emotional distress. Id. at 273-74; see also Miller v. Willbanks, 8 S.W.3d 607, 610-12 (Tenn. 1999) (discussing the history and evolution of the tort of intentional infliction of emotional distress in Tennessee).

The Court of Appeals in this case adopted the rationale and conclusions previously adopted by the Western Section of the Court of Appeals in Lockhart v. Jackson-Madison County Gen. Hosp., 793 S.W.2d 943 (Tenn. Ct. App. 1990), that "the plain language of the statute justifies no other construction of the legislature's intent" than the intent to have section 29-20-205(2) include negligent infliction of emotional distress. Lockhart, 793 S.W.2d at 946. Specifically, the court concluded that because both the torts of negligent infliction of emotional distress and intentional infliction of emotional distress existed prior to the enactment of the GTLA, and because the legislature is presumed to know the existence of the two separate torts but chose not to make a distinction in the statute, the legislature intended to include both in the statutory language.

The flaw in this rationale is that, as discussed above, the tort of negligent infliction of emotional distress was at best in its embryotic stage at the time the GTLA was enacted, while intentional infliction of emotional distress had already been fully established and recognized by the courts. Unlike the Court of Appeals, we are persuaded, based upon the development of the common law at the time the GTLA was enacted, that the legislature most likely intended that only the tort of intentional infliction of emotional distress would be included in the section preserving immunity for governmental entities.

In addition to the status of the common law at the time the GTLA was enacted, we are persuaded by the application of well-known principles of statutory construction that this was the legislature's intent.

There has been some dispute as to whether the phrase "infliction of mental anguish," as used in Tennessee Code Annotated section 29-20-205(2), was meant to refer only to the intentional tort or to both the intentional and negligent torts. In Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73 (Tenn. 2001), this Court referred to section 29-20-205(2) as the "intentional tort exception" to the general waiver of immunity for negligent acts of employees. Id. at 81. In Elmore v. Cruz, No. E2001-03136-COA-R3-CV, 2003 WL 239169 (Tenn. Ct. App. Feb. 4, 2003), the Eastern Section of the Court of Appeals concluded that Limbaugh "recognized that [section 29-20-205(2)] applies to intentional torts" and, therefore, that governmental entities were only immune from suit for

intentional infliction of emotional distress and waived immunity for negligent infliction of emotional distress. However, in Lockhart, (decided prior to Limbaugh) the Western Section of the Court of Appeals held that the phrase "infliction of mental anguish" in section 29-20-205(2) included both negligent and intentional infliction of mental anguish, thus preserving immunity for the governmental entity in the event of the negligent infliction of mental anguish caused by an employee. 793 S.W.2d at 943. In this case, the Middle Section of the Court of Appeals disagreed with the decision in Elmore, and instead reached the same conclusion as the court in Lockhart, that "infliction of mental anguish" included *negligent* infliction of mental anguish.

In construing statutes, this Court's role is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)); see also Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). Legislative intent is derived from the plain and ordinary meaning of the statutory language unless the statute is ambiguous. See State v. Blackstock, 19 S.W.3d 200, 210 (Tenn. 2000); Owens, 908 S.W.2d at 926. Additionally, because the GTLA's limited waiver of governmental immunity is in derogation of the common law, it is to be strictly construed and confined to its express terms. Doyle, 49 S.W.3d at 858.

If statutory language is ambiguous, we must look to the entire statutory scheme to determine legislative intent. Owens, 908 S.W.2d at 926. "'A statute is ambiguous if the statute is capable of conveying more than one meaning.'" LeTellier v. LeTellier, 40 S.W.3d 490, 498 (Tenn. 2001) (quoting Bryant v. HCA Health Servs. of N. Tenn., Inc., 15 S.W.3d 804, 809 (Tenn. 2000)). In ascertaining the legislature's intent, "'[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning.'" Scott v. Ashland Healthcare Ctr., Inc., 49 S.W.3d 281, 286 (Tenn. 2001) (quoting State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995)). Component parts of a statute are to be construed, if possible, consistently and reasonably. See State v. Alford, 970 S.W.2d 944, 946 (Tenn. 1998).

Aiding in our interpretation of legislative intent are the maxims of *noscitur a sociis* and *ejusdem generis*. Under the doctrine of *noscitur a sociis*, "the meaning of questionable or doubtful words or phrases in a statute may be ascertained by reference to the meaning of other words or phrases associated with it." Black's Law Dictionary 1060 (6th ed. 1990); see also Hammer v. Franklin Interurban Co., 354 S.W.2d 241, 242 (Tenn. 1962) (holding that statutory terms should be construed with reference to their associated words and phrases). The doctrine of *noscitur a sociis* permits courts to modify and limit subordinate words and phrases in order to harmonize them with each other and with the evident purpose of the statute. See Scopes v. State, 289 S.W. 363, 364 (Tenn. 1927).

*Ejusdem generis* is an illustration of the broader maxim of *noscitur a sociis*. Under this doctrine of statutory construction, "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." Black's Law Dictionary 517 (6th ed. 1990); see also Lyons v. Rasar, 872

S.W.2d 895, 897 (Tenn. 1994) (citing <u>Nance ex rel. Nance v. Westside Hosp.</u>, 750 S.W.2d 740, 743 (Tenn. 1988)); <u>State v. Sims</u>, 909 S.W.2d 46, 49 (Tenn. Crim. App. 1995). In other words, "'where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class.'" <u>Automatic Merch. Co. v. Atkins</u>, 327 S.W.2d 328, 333 (Tenn. 1959) (quoting <u>State v. Grosvenor</u>, 258 S.W. 140, 141 (Tenn. 1924)).

By way of example, the court in <u>Sims</u> applied the *ejusdem generis* canon of statutory construction to construe the meaning of "extreme physical pain" as found in the definition of "serious bodily injury," Tennessee Code Annotated section 39-11-106(a)(33). The court held that the extreme physical pain definition of serious bodily injury must be read as applying to the same class of injuries as those enumerated, i.e. those causing a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty. <u>Sims</u>, 909 S.W.2d at 49.

The statutory language at issue in this case provides that exceptions to a governmental entity's general waiver of immunity for negligent acts include injuries arising out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, *infliction of mental anguish*, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2) (2000) (emphasis added). All of the other torts listed are intentional torts. Applying the doctrines of *noscitur a sociis* and *ejusdem generis*, we interpret the phrase "infliction of mental anguish" with reference to the other words and phrases used with it in this section of the act. Accordingly, the tort of infliction of mental anguish must be read as applying to the same *class* of torts as the rest of those enumerated. <u>See Sims</u>, 909 S.W.2d at 49. Because the rest of the enumerated torts are all intentional torts, we conclude that "infliction of mental anguish" is also meant to include only the intentional tort.

### B. Sallee's Motion to Amend his Complaint

Sallee filed his original complaint against Barrett on March 25, 2003. The discharge of Barrett's gun occurred on April 4, 2002. On May 19, 2003, when Sallee filed a response to Barrett's motion to dismiss, Sallee also filed a motion to amend his complaint to add the City of Clarksville as a defendant. The trial court denied this motion to amend as untimely and not relating back to the original complaint.

Rule 15 of the Tennessee Rules of Civil Procedure governs the amendment of pleadings. Rule 15.01 provides that leave to amend pleadings "shall be freely given when justice so requires." However, the grant or denial of a motion to amend is regarded as being within the sound discretion of the trial court, <u>see Doyle</u>, 49 S.W.3d at 856, and trial courts are not required to grant such motions if "the amendment would have been futile." <u>Huntington Nat'l Bank v. Hooker</u>, 840 S.W.2d 916, 923 (Tenn. Ct. App. 1991).

The trial court denied the motion to amend, saying that it was "futile" because the amendment would not relate back to the original cause of action, as the motion to amend was filed outside the one-year statute of limitations. Rule 15.03 of Tennessee Rules of Civil Procedure explains when an amendment changing a party relates back to the date of the original pleading:

> Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party . . . against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the <u>identity</u> of the proper party, the action would have been brought against the party.

(Emphasis added.)

Thus, Rule 15.03 presents a two-pronged test which must be met in order for an amendment to change the party against whom the claim is asserted. First, the new party must have received sufficient notice of the action within the specified time-frame so that it will not be prejudiced in maintaining its defense. <u>See</u> <u>Doyle</u>, 49 S.W.3d at 856-57; <u>Smith v. Southeastern Props. LTD</u>, 776 S.W.2d 106, 109 (Tenn. Ct. App. 1989). It is reasonable to assume that the City of Clarksville was aware of the action brought by Sallee within the time-frame set forth in the rule because it was the City Attorney for the City of Clarksville that was representing Barrett in his defense of the suit against him.

However, Rule 15.03 requires more than simply showing that the potential new defendant had been made sufficiently aware of the commencement of the action. "The second requirement is that each potential new party must have known that but for a misnomer or mistake concerning his or her identity, the action would have been brought against him or her." <u>Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment</u>, 821 S.W.2d 938, 941 (Tenn. Ct. App. 1991) (citing <u>Lease v. Tipton</u>, 722 S.W.2d 379, 380 (Tenn. 1986)). "A 'mistake' within the meaning of this rule does not exist merely because a party who may be liable for conduct alleged in the original complaint was omitted as a party defendant." <u>Smith</u>, 776 S.W.2d at 109; <u>see also</u> <u>Lease</u>, 722 S.W.2d at 380 (holding that plaintiff's motion to amend her complaint to add her husband as a defendant did not relate back because her failure to sue her husband was not due to misnomer or mistake involving the identity of the proper party, but because the law at the time of the complaint did not allow one spouse to sue another in tort).

It is the plaintiff that has the burden of showing that the failure to name the new defendant in the original complaint resulted from a mistake concerning the identity of the proper party. <u>Rainey Bros. Constr. Co.</u>, 821 S.W.2d at 941 (citing <u>Smith</u>, 776 S.W.2d 106). The circumstances of the case

before us do not satisfy the second requirement of Rule 15.03–Sallee has failed to show that the failure to name the City of Clarksville in the original complaint resulted from a mistake concerning its identity. Therefore, the trial court did not abuse its discretion in denying Sallee's motion to amend his complaint.

## IV. Conclusion

In sum, considering the ambiguity of the statutory language, the state of the law at the time the statute was enacted, and general principles of statutory construction, we hold that the legislature intended the phrase "infliction of mental anguish" to apply only to the intentional infliction of emotional distress. The City of Clarksville does not retain immunity for claims of negligent infliction of emotional distress, and is the proper party-defendant, while Barrett is immune from suit. Therefore, we find that the Court of Appeals erred in reversing the trial court's grant of the defendant's motion to dismiss for failure to state a claim. We also hold that because Sallee failed to show that his failure to name the City of Clarksville in the original complaint resulted from a mistake concerning its identity, the requirements of Rule 15.03 were not satisfied, and the trial court did not abuse its discretion in denying Sallee's motion to amend his complaint to add the City of Clarksville as a defendant.

Costs of this appeal are assessed to Thomas Sallee, and his sureties, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE