# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 4, 2006 Session

## ALEXANDER C. WELLS v. TENNESSEE BOARD OF REGENTS, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 95-2144-III     Carol McCoy, Chancellor**

---

**No. M2005-00938-COA-R3-CV - Filed on September 27, 2006**

---

Following termination of his employment, a professor at Tennessee State University prevailed in this protracted tenure termination proceeding. On remand to Chancery Court following a successful appeal, the professor filed a Tenn. R. Civ. P. 60.02 motion for relief from the pre-appeal judgment to assert a claim for back pay. The Chancellor granted relief and awarded back pay, which the defendants challenge on two grounds. They contend the court abused its discretion by awarding Rule 60 relief, and because back pay is not specifically authorized by statute, an award of back pay violates the sovereign immunity doctrine. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. PATRICIA J. COTTRELL, J., filed a dissenting opinion.

Paul G. Summers, Attorney General and Reporter; and Brandy M. Gagliano, Assistant Attorney General, for the appellants, Tennessee Board of Regents, Tennessee State University, and James Hefner.

Phillip L. Davidson, Nashville, Tennessee, for the appellee, Alexander C. Wells.

## OPINION

Alexander C. Wells was a tenured professor at Tennessee State University in 1990 when a student filed a complaint accusing him of sexual harassment. Following an internal investigation, the investigating officer at the university determined there was sufficient evidence to find that Professor Wells violated the university's sexual harassment policy. Professor Wells appealed that finding. An administrative law judge conducted a full evidentiary hearing and determined that Professor Wells violated the university's sexual harassment policy. That decision was then submitted to the university president, who upheld the finding.

Thereafter, tenure termination proceedings were initiated. The university's tenure committee ruled that Professor Wells's tenure should be terminated. Professor Wells appealed the decision of

the tenure committee to the university president, who approved the committee's decision. Professor Wells then appealed the university's decision to the Tennessee Board of Regents (Board). Chancellor Charles E. Smith conducted a review after which he concurred with the university's decision. Professor Wells appealed the Chancellor's decision to the Board, which denied the appeal. Following the Board's decision, Professor Wells initiated this action by filing a Petition for Review with the Davidson County Chancery Court. The Tennessee Board of Regents, Tennessee State University, and James Hefner, President of the university, were the named defendants. The Chancery Court conducted a hearing following which it reversed the Board's decision to terminate Professor Wells. An order to that effect was entered August 17, 1998. The defendants appealed. Ultimately, the Tennessee Supreme Court affirmed the decision of the Chancery Court, following which the case was remanded.

On remand, Professor Wells filed a Rule 60.02(5) Motion for Relief from the pre-appeal order. The purpose of the motion was to enable him to assert a claim for back pay for the time he was wrongfully terminated. The Chancellor granted the Rule 60 motion and awarded Professor Wells back pay plus prejudgment interest.

The defendants present two issues on appeal. One, they contend the court abused its discretion by granting Professor Wells' motion for Rule 60 relief. Two, they contend the award of back pay, which is not specifically authorized by statute, violates the sovereign immunity doctrine.

## TENN. R. CIV. P. 60.02 RELIEF

The function of Tenn. R. Civ. P. 60.02 is "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). It is "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). Tenn. R. Civ. P. 60.02 provides in part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

A motion for relief pursuant to Tenn. R. Civ. P. 60.02 addresses itself to the sound discretion of the trial judge. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). Our scope of review of such a decision is to determine if that discretion was abused. *Id.*; *Day v. Day*, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996).

When we review a trial court's decision under the abuse of discretion standard, we will uphold the trial court's ruling "so long as reasonable minds can disagree as to the propriety of the decision made." *Franklin Capital Assocs., L.P. v. Almost Family, Inc.*, 194 S.W.3d 392, 405 (Tenn. Ct. App. 2005)(citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

Considering the equities of this case, we have concluded reasonable minds could disagree as to the propriety of the Chancellor's decision. Accordingly, we find no error with the Chancellor's exercise of her discretion by avoiding the possible inequity that may have arisen had Professor Wells been procedurally deprived of the opportunity to assert a claim for back pay. Therefore, we affirm the Chancellor's discretionary decision to grant Rule 60.02(5) relief to seek back pay.

## SOVEREIGN IMMUNITY

This case comes to us following the determination that Professor Wells was wrongfully terminated as a tenured professor at Tennessee State University, for which he was awarded back pay, benefits, and prejudgment interest for the period of time he was wrongfully terminated. The defendants contend the award violates the sovereign immunity doctrine.

The relevant statute, Tenn. Code Ann. § 49-8-304, does not expressly provide for the award of back pay in the event a university faculty member who had been awarded tenure is "vindicated or reinstated" following a review of the professor's dismissal or suspension for cause. In pertinent part the statute provides, "a faculty member who has been awarded tenure, and who has been dismissed or suspended for cause, may obtain de novo judicial review of the final decision. . . ." Tenn. Code Ann. § 49-8-304(a).

The sovereign immunity doctrine provides that the state, as a sovereign entity, is immune from suit except to the extent that it consents to be sued. *Brown v. State*, 783 S.W.2d 567, 571 (Tenn. Ct. App. 1989)(citing *Brewington v. Brewington*, 215 Tenn. 475, 387 S.W.2d 777 (1965)). The right to file a cause of action against the state originates from the Constitution of Tennessee, which states "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. "A statute permitting suit against the State must be strictly construed, and jurisdiction cannot be enlarged by implication." *Brown*, 783 S.W.2d at 571 (citing *Stokes v. Univ. of Tenn.*, 737 S.W.2d 545 (Tenn. Ct. App. 1987)).

The statute at issue does not expressly provide a remedy for back pay and benefits; thus, it would appear that Professor Wells' claim for back pay and benefits is barred by the sovereign immunity doctrine. That argument fails, however, in light of the Supreme Court's holding in *State ex rel. Chapdelaine v. Torrence*, 532 S.W.2d 542, 550 (Tenn. 1976). In *Chapdelaine*, the Supreme Court was faced with the same argument presented here, that an award of back pay to this professor violated principles of sovereign immunity. The Chancellor awarded the tenured professor the sum of $12,500 for back pay, which the Supreme Court found proper. As the Court explained,

While the Chancellor treated this as "damages", we think that is an unfortunate characterization. The word "damages" connotes a recovery for hurt, harm or injury inflicted upon an injured party. We are not dealing here with damages in the conventional sense of the word. The award was simply an enforced restitution of unpaid wages to the extent they were not mitigated. In common parlance this was an award for back pay.

*Chapdelaine*, 532 S.W.2d at 550. The Court went on to defuse the sovereign immunity defense, explaining:

We are not impressed with the insistence that this action against these defendants, as state officials engaged in the pursuit of their official duties, is a suit against the state and, therefore, is barred by sovereign immunity.

Article 1, Section 17 of the Constitution of Tennessee provides in pertinent part: *Suits may be brought against the State* in such manner and in such courts as the Legislature may be law direct. (emphasis in original)

Section 49-1417 T.C.A. gives the Chancery Court jurisdiction of actions brought by tenured teachers to review their dismissal.

Cities and counties are arms of the state and such immunity as they claim is wholly derivative from the state itself, and this Court has consistently approved awards of back pay as to teachers in city and county school systems. *See e.g., Jeffers v. Stanley, supra; Wagner v. Elizabethton City Board of Education*, 496 S.W.2d 468 (Tenn. 1973).

*Chapdelaine*, 532 S.W.2d at 550. Upon the filing of a Petition to Rehear by the state, the Supreme Court reaffirmed its holding concerning the sovereign immunity defense, explaining:

The State's petition insists that we failed to consider s 20-1702 T.C.A. relating to the sovereign immunity of the State. Section VII of the main opinion discusses this issue. We reiterate that "we are not impressed with the insistence (that this) is a suit against the State and, therefore, is barred by sovereign immunity."

The college and university teachers' tenure law, as incorporated in § 49-1421 T.C.A., and the regulations promulgated pursuant thereto, would be "as sounding brass, or a tinkling cymbal", if it did not carry with it the coordinate right of a tenured teacher to seek back pay in wrongful dismissal cases.

*Chapdelaine*, 532 S.W.2d at 551.

The defendants have correctly noted that the statute at issue in *Chapdelaine* was repealed in 1976. Ordinarily, that would be significant. We note, however, the statute was repealed only to be revived as part of a broader statutory scheme. That scheme pertained to the implementation of a State University and Community College System, with the governance, management and control of the state universities and community colleges vested in one of the defendants, the Board of Regents. Tenn. Code Ann. § 49-8-101, *et. seq.* The caption of Senate Bill No. 2101, the 1976 legislation repealing the *Chapdelaine* statute, explained it was

> AN ACT to repeal Tennessee Code Annotated, Sections 49-1421 and 49-1422; to authorize the Board of Regents to promulgate a tenure policy for faculty at institutions withing the State University and Community College System of Tennessee; to authorize the Board to define the nature of tenure and rights and responsibilities thereunder; . . . *to authorize the Board to provide for adequate cause for termination of faculty with tenure, and the procedures for such termination ' and to provide for judicial review*. (emphasis added)

1976 Tenn. Pub. Acts 1275.

As we know from reading *Chapdelaine*, the former statute authorized and required the state board of education – the predecessor to the Board of Regents – to establish a system of tenure for college and university teachers and promulgate rules and regulations for a tenure system. Furthermore, that statute provided that the teacher "*shall be entitled to a judicial review of the action of the board* for the same purposes and in the same manner provided by s 49-1417." *Chapdelaine*, 532 S.W.2d at 545. (emphasis added) The new statutory scheme provided that a faculty member who had been awarded tenure, and who was dismissed for cause, may obtain similar relief to that available in the old statute, that being de novo judicial review by filing a petition in chancery court. The statute in effect today is also substantially similar. It reads:

> A faculty member who has been awarded tenure, and who has been dismissed or suspended for cause, may obtain de novo judicial review of the final decision by filing a petition in a chancery court. . . .

Tenn. Code Ann. § 49-8-304(a).

The defendants also point to Tenn. Code Ann. § 49-5-511, which applies to teachers in the elementary and secondary schools, and specifically provides for the award of back pay in the event that a teacher is "vindicated or reinstated" as a result of an investigation into the suspension of the teacher by the director of schools. Tenn. Code Ann. § 49-5-511(a)(3). They contend Tenn. Code Ann. § 49-5-511 shows a legislative intent contrary to the holding in *Chapdelaine*. We are unpersuaded by the argument for two reasons. One, the statute does not pertain to college and university professors. Two, we view the defendants suggestion as at best faint evidence of legislative intent and are certain the General Assembly would have been more direct. It has had thirty years to express a contrary intent, and we find it has declined to do so.

The *Chapdelaine* court awarded the tenured professor back pay when faced with a substantially similar statute as presented here. We find no uncertainty in the Supreme Court's holding in *Chapdelaine*, and we are obliged to follow the lead of the Tennessee Supreme Court.

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the defendants.

_____
FRANK G. CLEMENT, JR., JUDGE