IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 7, 2007 Session


**ALEXANDER C. WELLS v. TENNESSEE BOARD OF REGENTS,
TENNESSEE STATE UNIVERSITY, AND JAMES HEFNER**

**Appeal by Permission from the Court of Appeals, Middle Section
Chancery Court for Davidson County
No. 95-2144-II, Carol McCoy, Chancellor**

---

**No. M2005-00938-SC-R11-CV - Filed on August 17, 2007**

---

We accepted review of this case to decide whether a tenured university professor whose employment by the State was wrongfully terminated may recover back pay and lost benefits pursuant to Tennessee Code Annotated section 49-8-304. While the trial court initially found there was no statutory authority to grant monetary damages, the plaintiff was awarded back wages, lost benefits, and interest. The Court of Appeals affirmed. Because there is no statutory authority for the award, however, the judgments of the trial court and the Court of Appeals must be reversed and the cause dismissed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed &
Case Dismissed**

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER and CORNELIA A. CLARK, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Jay C. Ballard, Assistant Attorney General, for the appellants, Tennessee Board of Regents, Tennessee State University, and James Hefner.

Phillip L. Davidson, Nashville, Tennessee, for the appellee, Alexander C. Wells.

**OPINION**

**Factual and Procedural Background**

In 1958, Alexander Wells ("the Plaintiff") was employed as a lab assistant at Tennessee State University ("TSU"). As a part of his duties at the school, he conducted research and taught several biology-related courses each semester. In 1985, the Plaintiff was granted tenure.

In 1990, a student filed a complaint with TSU alleging that the Plaintiff had sexually harassed her. In accordance with the policy of the Tennessee Board of Regents, an administrative law judge conducted an evidentiary hearing and determined that the Plaintiff had, in fact, violated the sexual harassment policy. TSU subsequently conducted proceedings to determine if adequate grounds existed to terminate employment. An internal hearing committee found that the Plaintiff had "capricious[ly] disregard[ed] . . . accepted standards of professional conduct," a statutory ground for dismissal, and recommended termination. See Tenn. Code Ann. § 49-8-302(5) (2002). TSU President, James Hefner, who was joined as a defendant in his official capacity, terminated the employment of the Plaintiff in 1995. An appeal to the Board of Regents, also a named defendant, was unsuccessful.

The Plaintiff then filed a petition seeking judicial review of the decision to terminate his employment. After considering the record and testimony of the Plaintiff's witnesses, the Davidson County Chancery Court determined that the evidence did not sufficiently establish any violation of the professional standards of conduct and reversed the decision of the Tennessee Board of Regents. Upon review, this Court affirmed the ruling of the chancellor.[1] See Wells v. Tenn. Bd. of Regents, 9 S.W.3d 779 (Tenn. 1999). The issue of damages was not before us in the prior appeal.

In 1998, while the first appeal was pending, the Plaintiff filed a motion in the chancery court seeking monetary damages. The chancellor ruled that the trial court no longer had jurisdiction over the case because of the appeal and concluded that, even if there was jurisdiction, the Plaintiff had waived his right to relief by failing to seek damages at trial. The chancellor also ruled that the State was protected from liability by the doctrine of sovereign immunity.

A few months later, the Plaintiff filed an action against the State in the Tennessee Claims Commission alleging breach of contract. He sought $600,000 in damages for back pay, attorney's fees, lost benefits, and litigation costs incurred since the date of his dismissal. The Claims Commission dismissed the action because the Plaintiff failed to prove the existence of a contract. The Court of Appeals affirmed. See Wells v. State, No. M2002-01958-COA-R3-CV, 2003 WL 21849730 (Tenn. Ct. App. Aug. 8, 2003). As to the claim for damages, the Court of Appeals observed that "[i]t is a mystery to us why the claim for back pay was not pursued in the original action in the chancery court or why the order overruling the motion for back pay was not appealed. But those issues are not before us now." Id. at *4.

---

[1]At that time, Tennessee Code Annotated section 49-8-304(d) (1990) authorized a direct appeal to this Court.

Undeterred by a lack of success in either the chancery court or the Claims Commission, the Plaintiff filed a motion in 2004 under Rule 60.02(5) seeking relief from the chancellor's previous order of dismissal of the claim for damages.[2] The chancellor granted the motion and directed the Board of Regents to pay the Plaintiff back wages, lost benefits, and interest stemming from his termination. The chancellor reasoned that because the issues of reinstatement and back pay were never addressed, "the end result" from the prior litigation was "not fair."

In a divided decision, the Court of Appeals affirmed the award. The majority concluded that (1) the chancery court did not abuse its discretion by granting Rule 60 relief to the Plaintiff, and (2) even though Tennessee Code Annotated section 49-8-304 does not expressly provide for an award of back pay, the enactment of the statute waived the State's sovereign immunity in that regard.

## Analysis

The General Assembly has authorized the Tennessee Board of Regents to promulgate a tenure policy for faculty within the state university and college system to "ensure academic freedom and provide sufficient professional security to attract the best qualified faculty available." Tenn. Code Ann. § 49-8-301(a) (2002). The Board is also charged with the responsibility of providing "for the termination of faculty with tenure by institutions for adequate cause . . . ." Tenn. Code Ann. § 49-8-301(b)(3) (2002). Among other proper grounds, "adequate cause" is defined as falsification of qualifications, incompetence or dishonesty, the willful failure to perform duties or assignments, conviction of a felony, excessive use of drugs or alcohol, or, as was initially found in this case, the capricious disregard of accepted standards of professional conduct. See Tenn. Code Ann. § 49-8-302 (2002).

In the event a tenured faculty member is dismissed based on the grounds identified in section 49-8-302, judicial review is available under section 49-8-304:

> **Judicial review**. – (a) A faculty member who has been awarded tenure, and who has been dismissed or suspended for cause, may obtain de novo judicial review of the final decision by filing a petition in a chancery court having jurisdiction within thirty (30) days of the final decision, and copies of the petition shall be served upon the board and all parties of record.
>
> (b) Within forty-five (45) days after service of the petition, or within such further time allowed by the court, the board shall transmit to the court the original or a certified copy of the entire record of the proceeding.

---

[2] Rule 60.02 of the Tennessee Rules of Civil Procedure provides in part: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud . . . misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged . . . ; or (5) any other reason justifying relief from the operation of the judgment."

(c) The chancellor shall reduce the chancellor's findings of fact and conclusions of law to writing and make them parts of the record.

Tenn. Code Ann. § 49-8-304 (2002).

Our task in this appeal is to determine whether section 49-8-304 authorizes an award of back pay and lost benefits to a tenured faculty member who has been wrongfully discharged. In performing this analysis, we are guided by the established rule that the construction of a statute is a question of law. Sallee v. Barrett, 171 S.W.3d 822, 825 (Tenn. 2005). The standard of appellate review for questions of law is de novo. Leab v. S & H Mining Co., 76 S.W.3d 344, 348 (Tenn. 2002); Bryant v. Genco Stamping & Mfg. Co., 33 S.W.3d 761, 765 (Tenn. 2000). We must presume that every word in a statute has meaning and purpose; thus, each word should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). If the statutory language is clear and unambiguous, we apply its plain meaning in its normal and accepted use and without a forced interpretation that would limit or expand the statute's application. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). When called upon to construe a statute, courts must take care not to unduly restrict a statute's application or conversely to expand its coverage beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002). If, however, a statute is ambiguous, capable of conveying more than one meaning, we look to the entire statutory scheme to determine legislative intent. Sallee, 171 S.W.3d at 828.

The Plaintiff argues that Tennessee Code Annotated section 49-8-304 permits an award of monetary damages for wrongful termination and submits that the State has, therefore, waived its sovereign immunity as to awards of back pay and lost benefits. In response, the defendants, the Board of Regents, TSU, and Dr. Hefner, point out that the section contains no language indicating the legislature meant to provide for an award of monetary damages in circumstances like these and maintain that they are protected by sovereign immunity.

Historically, the doctrine of sovereign immunity has provided that a sovereign governmental entity cannot be sued in its own courts absent legislative consent. Hawks v. City of Westmoreland, 960 S.W.2d 10, 14 (Tenn. 1997); Williams v. State, 139 S.W.3d 308, 311 (Tenn. Ct. App. 2004); see also Lewis L. Jaffe, Suits Against Governments and Officers, Sovereign Immunity, 77 Harv. L. Rev. 1 (1963). Article 1, section 17 of the Tennessee Constitution does, however, authorize the General Assembly to waive sovereign immunity: "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Further, Tennessee Code Annotated section 20-13-102(a) (1994) prohibits courts from entertaining suits against the State, absent waiver, and requires dismissal on proper motion. The doctrine of sovereign immunity, therefore, has both a constitutional and statutory basis. Jones v. L & N R.R. Co., 617 S.W.2d 164, 170 (Tenn. Ct. App. 1981).

In Tennessee, the principal case on the subject at issue is State ex rel. Chapdelaine v. Torrence, 532 S.W.2d 542 (1976), wherein a tenured university professor was awarded back pay for

breach of his employment contract following his wrongful discharge. At the time that case was decided, Tennessee Code Annotated section 49-1421 (1966) provided that tenured college and university professors were entitled to "judicial review of [termination decisions] for the same purposes and in the same manner provided in section 49-1417." Section 49-1417 was part of the statutory scheme applicable to elementary and secondary school teachers in local school systems, for whom the courts had "consistently approved awards of back pay." Chapdelaine, 532 S.W.2d at 550; see also Wagner v. Elizabethton City Bd. of Educ., 496 S.W.2d 468 (Tenn. 1973); Jeffers v. Stanley, 486 S.W.2d 737 (Tenn. 1972). While the State relied upon the defense of sovereign immunity in Chapdelaine, this Court awarded back pay, observing that the "college and university teachers' tenure law, as incorporated in [section] 49-1421, . . . would be 'as a sounding brass, or a tinkling cymbal' if it did not carry with it the coordinate right of a tenured teacher to seek back pay in wrongful dismissal cases." Chapdelaine, 532 S.W.2d at 551.

In 1976, however, the legislature repealed section 1421, thereby severing the statutory connection between actions of tenured college and university faculty and those of tenured elementary and secondary teachers in local school systems. As expressed by Judge Patricia Cottrell in her dissent to the opinion of the Court of Appeals, the "basis for the Chapdelaine court's reliance on authority governing public school teachers in local systems no longer exists."

The present statute governing state college and university professors, Tennessee Code Annotated section 49-8-304 (2002), makes no mention of back pay or other monetary relief. In contrast, section 49-5-511(a)(3) (2002), the statute applicable to tenured school teachers on the elementary and secondary level, provides that if the teacher is "vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended." That the legislature did not include any such remedy for tenured faculty at the college or university level in section 304 speaks to the issue. Had the legislature intended for a wrongfully terminated college or university professor to receive monetary damages, the statute should have included that provision. When a statute is not ambiguous, "we need only to enforce the statute as written, with no recourse to the broader statutory scheme, legislative history, historical background, or other external sources of the Legislature's purpose." Abels v. Genie Indus. Inc., 202 S.W.3d 99, 102 (Tenn. 2006). Statutes may be construed in pari materia in order to ascertain their purpose or intent. Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994). When considering their meaning, this Court may employ the Latin maxim, express unius est exclusio alterius, which translates as "the expression of one thing implies the exclusion of . . . things not expressly mentioned." Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 84 (Tenn. 2001). The application of these guidelines suggests that the General Assembly has chosen not to waive sovereign immunity under these circumstances. Moreover, we have held that any abrogation of the immunity doctrine by the legislature must be set out in "plain, clear, and unmistakable terms." Northland Ins. Co. v. State, 33 S.W.3d 727, 731 (Tenn. 2000). In summary, the Plaintiff has no remedy for monetary relief.

In the alternative, the defendants argue that the chancery court abused its discretion by granting a Rule 60 motion six years after denying relief. Further, the defendants maintain that the Plaintiff waived his right to relief in the chancery court by filing a breach of contract claim in the

Claims Commission. As authority, the defendants rely upon Tennessee Code Annotated section 9-8-307(b) (1999), which provides that "[c]laims against the state . . . shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee." In light of our conclusion that section 49-8-304 does not authorize an award of monetary relief, we decline to address these ancillary issues.

## **Conclusion**

Because section 49-8-304 does not authorize an award of back pay and lost benefits to a wrongfully discharged tenured faculty member of a state college or university, the State is protected by sovereign immunity. Accordingly, the judgments of the trial court and the Court of Appeals are reversed, and the cause is dismissed. The costs on appeal are taxed against the Plaintiff, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE