## N. C. & ST. L. RAILWAY AND L. & N. RAILROAD CO. v. CARROLL COUNTY.

Western Section. February 7, 1930.

John T. Peeler, of Huntingdon, for appellant.
McCall & Browning, of Huntingdon, for appellee.

HEISKELL, J. These cases were consolidated and heard together. They involve the same questions and differ only as to the amounts in question. It will be sufficient to refer to the railroads as complainants and the County as defendant. The bills were filed August 24, 1928, to restrain Carroll county from collecting certain taxes for 1927. Three items were contested as follows:

FIRST: The County Quarterly Court at the July term, 1927, levied twenty-two (22) cents on each One Hundred Dollars ($100) worth

of taxable property for general county purposes, which is two (2) cents excessive, and over and above twenty (20) cents, the rate fixed by the Legislature for general county purposes.

SECOND: The said County Quarterly Court at the July term, 1927, levied a special bridge tax of eleven (11) cents on each One Hundred Dollars ($100) worth of property, and that the levy of said special bridge tax on property located in incorporated towns was invalid.

THIRD: That said County Quarterly Court at the July term, 1927, levied a special levee tax of eleven (11) cents on each One Hundred Dollars ($100) worth of taxable property assessed in Carroll county, which was invalid. That Carroll county had no such project in Carroll county, and that said item of tax was uncollectible.

It is also alleged in the bills that there was no Act of the Legislature authorizing the Quarterly Court to assess twenty-two (22) cents on the One Hundred Dollars ($100) for general County purposes, the twenty (20) cents was all that was authorized, and that neither of these levies were authorized by an Act of the General Assembly.

Injunctions were granted, demurrers filed and overruled; the County filed answers and cross-bills. The Chancellor rendered a decree dismissing the bills, dissolving the injunctions, and granting a recovery in favor of the County for all taxes claimed with interest and penalties as to the two items of 11 cents each for bridge and levee taxes, but not as to the 20 cents county taxes. The costs were adjudged three-fourths against complainants and one-fourth against the county. Complainants have appealed.

The assignments of error raise the same questions as the bills. The same questions indicated in the three propositions hereinabefore set out:

## I.

That the County Court of Carroll county at its July term, 1927, fixed certain items of taxes for the year 1927, as follows:

"On each One Hundred ($100) Dollars worth of assessable property both real and personal assessed in the county and on all railroads, telegraphs and telephones and other corporations, both local and distributable in the county, the county tax for the year 1927 shall be 22 cents. On each One Hundred ($100) Dollars worth of average stock reported by the merchant in the county the county tax shall be 22 cents, and the elementary school tax shall be 50 cents and for high school purposes shall be 15 cents, and the special bridge tax shall be 11 cents, and the special levee tax shall be 11 cents, and the good road bond tax shall be 18 cents, and the funding tax shall be 10 cents

on all law suits of whatever character the county tax shall be equal to the state tax, and the county highway tax shall be 3 cents and the special school funding tax shall be 10 cents.''

In February, 1928, the complainants offered to pay on their assessed valuations the taxes thus indicated except the 2 cents difference between 20 and 22 cents for general County purpose, the 11 cents for bridge tax on property within incorporated towns and the 11 cents levee tax. The County Trustee declined to accept the amount offered because complainants offered it as payment in full. The Chancellor held that it was not a tender because not an offer to pay in full.

At its July term, 1928, the County Court passed a resolution to correct the errors made in fixing the tax rate in July, 1927, changing the tax rate for county purposes from 22 to 20 cents and the rate for Good Roads Bond purposes from 18 to 20 cents on the $100 worth of taxable property. The Chancellor held that when the bills were filed in August, 1928, the County was claiming only 20 cents for general County tax and therefore complainants were entitled to no relief as to this item, the 20 cents not being in excess of the amount allowed by law to be collected.

Complainants contend that this was error because it was error to hold that the County Court could in July, 1928, change the tax rate fixed in July, 1927, for the year 1927 and therefore, the county must be considered as trying to collect 22 cents for county purposes. Code, Shannon, 6013, is as follows:

"COUNTY TAX.—The quarterly courts are required, at the first term in every year, to impose and provide for the collection of the tax for county purposes, and fix the rate thereof; but if they omit such duty at the first term, it shall be performed at the April, or any subsequent, quarterly session.''

Section 649 is substantially the same.

It is admitted by counsel for complainants that, under the case of McLean v. State, 55 Tenn., 26, if the fixing of the tax rate in July, 1927, had been void that it might have been fixed in 1928, but it is argued that the erroneous action of July, 1927, could not be corrected. If an invalid fixing of the rate will be treated as omitted, it would seem that an error making the rate void in part would be considered as an omission *pro tanto* and could be corrected afterwards. Under the action of the court of July, 1927, complainants say the court was limited by law to 20 cents for county purposes. Therefore, when 22 cents was fixed, this was invalid to the extent of 2 cents. If so, we see no reason why it could not be corrected afterwards. But complainants say, in any event, it could not be done after their tender. The Chancellor held there was no tender, but if there was we do not see that the county could be estopped to

make the correction, because it would violate the principle of equal taxation if the correction could be made as to some taxpayers and not as to others. The bills were filed to prevent the county from collecting more than 20 cents from complainants for general county purposes, whatever may be said of the action of the court in July, 1928; when the bills were filed in August, 1928, the county was seeking to collect only 20 cents for county purposes. Supporting the validity of the action of the County Court in July, 1928, in addition to the McLean case we have Bright v. Holloman, 7 Lea, 309 and Railroad v. Hamblen County, 117 Tenn., 327, in which last case the court said:

> "The County Court in levying taxes acts in a legislative and not in a judicial capacity and there is no constitutional or legislative provision making the act of the County Court in once levying a tax final, irrevocable or not subject to amendment. The general rule is that the exercise of the taxing power one time is not final or conclusive so as to prevent the levy from afterwards being amended. 27 Eng. & Amer. Enc. of Law (2 Ed.), 617, 618, 732."

In Cyc., Vol. 37, page 977 under the head of taxation it is said:

> "A levy of taxes which is illegal or invalid for irregularities may generally be cured by a re-levy in proper form and so where provision should have been made, in a general levy, for special purposes or extra expenses, but this was omitted the authority of the levying board is not exhausted but may be exercised by a new levy for such purposes."

The second contention of complainants is that the county had no right to impose the special bridge tax of 11 cents on property within incorporated towns. It is admitted that this tax is valid as to other property in the county and valid as to property of complainants outside incorporated towns.

It is admitted for defendants that County Courts possess no powers of taxation except those conferred by statute. It is also admitted that the defendant county does not construct bridges within the limits of incorporated towns, but it is insisted that this bridge tax is authorized by statute and authorized to be imposed upon all taxable property in the county.

Section 1708, Shannon's Code, is as follows:

> "Bridges that cannot be built by the overseer and his assistants shall be a county charge and the county court shall make a levy on the taxables to raise money for the purpose and shall contract and agree for building, keeping and repairing the same."

In King v. Sullivan County, 128 Tenn., 396, the statute provided for levying a tax on property within as well as outside incorporated

towns to pay for bridges in the county outside the towns. This act was attacked as unconstitutional, but the court held that it was not, and said:

"It being established that the tax is levied for a proper county purpose, and the complainant's property being located within the county, he is liable for the tax. If this were not so, the school system, the bridges across the waters of the State, the through roads in the various sections of the State main·tained and built, each of them, by general levy of taxation, would have to fall because similar taxes are levied in the various municipalities. The extra taxation which a citizen of an incorporated town must pay is to support his municipal government. It has no relation to the duty he owes to contribute to the support of the State and County governments which afford him and his property equal protection with every other citizen whether they reside within the municipality or not."

It is true the statute involved in that case expressly said the tax should be levied upon property within as well as without incorporated towns. But the court did hold that the building of bridges in the county was a county purpose and that it was entirely proper to tax for the purpose all property in the county, notwithstanding the fact that property inside the towns had to bear extra taxes for municipal purposes. Section 1708 of the Code authorized the county to levy a tax for bridge purposes. It is not contended that the bridges were not of a character the county should levy a tax to build. If so, the Code says the county shall levy a tax on the taxables to raise the money. What does this mean? All the taxable property of the county, or only that outside incorporated towns? The taxables or the taxable property of the county are apt terms to indicate all taxable property in the county. They do not admit the construction, taxable property of the county, except such as is included in the limits of incorporated towns. There was no error in this feature of the decree.

The third contention is that it was error to hold the word "levee" used by the County Court in fixing the tax rate for the year 1927 meant an embankment thrown up for a roadway and a part of the public roads of the county and therefore that the tax of 11 cents for this purpose was valid.

The contention here is not that a tax for road purposes is invalid. Not that a special tax for building embankments or causeways as approaches to bridges to raise the road above overflow, and keeping said embankments in repair would not be a valid tax, but that the word "levee" has a totally different meaning, and means something not within any county purpose of Carroll county and therefore the tax is void.

The contest here resolves itself into a controversy as to the meaning of the word *levee*. The language of the resolution of the County Court in fixing the 1927 tax is: "And the special bridge tax shall be 11 cents and the special levee tax shall be 11 cents and the good road bond tax shall be 18 cents." Proof was offered by defendant to show that the word *levee* in the resolution and also in the statute authorizing the tax meant an embankment to elevate a road above overflow. This evidence was objected to by complainant, the objection was overruled by the court and this is assigned as error. This court held that *levee* meant a road fill or embankment and this is assigned as error. The complainants insist that the word *levee* means an embankment to restrain water, to prevent overflow, and a space adjacent to a navigable river where vessels may land to unload and receive passengers and freight; that neither of these purposes was possible in practice as there was no such project in Carroll county. Law books, dictionaries and encyclopedias are cited to support the meanings contended for. It is admitted for the county that *levee* has the meanings contended for by complainants, and it is also admitted that if either of these meanings can be attached to the word in the resolution, that the tax is void because there is no purpose in Carroll county upon which it could be expended and no statutory authority to levy it, but counsel for defendant say the word also means an embankment thrown up for road purposes, not to prevent land from being overflowed, but to elevate the road above high water and prevent its inundation; that it was used in this sense in the resolution of the County Court and in the statute authorizing the tax, and that in this sense the tax is legal and valid as held by the Chancellor. As to the proof introduced to show this meaning contended for by the defendant, complainants insist it is incompetent and should have been excluded because the proceedings of the County Court cannot be proved by parol testimony, and that what the legislature did cannot be shown in this way. The reply to this is: the rule is beyond question; the action of the court and legislature cannot be shown by parol testimony, but where a word is used by either court or general assembly which is ambiguous, the meaning can be shown, and that this is especially true where the word has meanings which if attached would make the court proceeding and statute void nonsense, and has another meaning which would carry with it practical sense, utility and validity, that it is competent to show by parol testimony that the word was used in this latter sense.

There is no controversy as to the meanings of the word *levee*, contended for by complainants, and they are the ordinary definitions and the only ones to be found, clearly and distinctly given in the authorities; yet we think it is clear even aside from the parol proof

offered, that the word *levee* has acquired a meaning in West Tennessee at least equivalent to causeway or embankment to elevate a road, across low ground, such as river or creek bottoms above the level of high water. This meaning may not quite have got into good society. It may not have been introduced to the dictionary, but still it is living and is used and understood in this section. We think the testimony admitted was competent just as such testimony would be in case of a will or a written contract to show a local but well understood meaning of a word used, but even aside from this, the meaning found by the Chancellor can be sustained. Webster's New International Dictionary gives this: Levée (F levée fr lever to raise. See lever cf levy) 1 An embankment to prevent inundation: as the levees along the Mississippi: also a landing place, pier or quay, Southern and Western U. S. 2 The very low ridge sometimes built up by streams on their flood plains on either side of their channels. It is composed of alluvium which is deposited by the stream in times of flood.

We see from this definition that the word is derived from the French verb lever, to raise, the same source from which we derive the word levy, to raise taxes or troops, and the word *lever*, a bar or pole which we use to raise heavy objects. All through this record the word *levy* is used in the sense to raise taxes, and the noun levy, means that which is raised. This is the meaning running through these words—to raise and that which is raised. The real definition of the word levee, is: "An embankment to prevent inundation." The Mississippi levees are given as illustration. An embankment to prevent inundation of a road is within the idea and the language of the definition, even more than the boat landing, which meaning is also local.

Again, it is a familiar maxim that words like men *noscitur a sociis.* They are judged by the company they keep. In this record the word *levee* is used by the County Court and by the legislature in connection with roads, not agriculture or farm relief. The act authorizing this levy of taxes is private Acts of 1927, Chapter 752, and its caption is as follows: "An act to regulate the building and repairing of bridges, culverts, levees, and to regulate the laying out working of all public roads in all counties in this State (having a certain population. It is conceded it was intended to apply to Carroll county).

The body of this statute follows the caption. It provides for roads, bridges, culverts and levees. In this connection the word *levee* can have no other meaning than causeway or embankment to elevate a road. In this connection this meaning is apt and intelligible. No other meaning could have been intended. This being so, there was statutory authority for the tax. We are inclined to

think that in the absence of any proof, the court would take judicial cognizance of this meaning of the word levee, in this part of the country at least. Newspapers in this section speak continually of automobiles running off of levees, meaning road embankments. Perhaps this might be considered as a part of the history of the country and of the language, a matter of common knowledge. A word may not be in the dictionary at all and yet we may know exactly what it means. Take robot for instance. If it has made the grade of the dictionary we have not seen the dictionary, yet we all know what it means. We think the Chancellor was well justified in finding in the present case that levee meant road embankment, and in holding the tax valid and collectible from all taxable property in the county. In at least one case in this State this meaning of the word has been recognized. In State ex rel. Abernathy v. Robertson, 5 Higgins, 443, the court uses this language:

"At the April term, 1912, of the quarterly session of the County Court of Lauderdale county, that court appointed defendant Robertson and two others a committee to finish certain work on a levee, a term used for a highway the county was having built at Double Bridges. . . ."

It is claimed that the tax for levee purposes is void because it does not give notice of the purpose for which the money raised is to be used. This argument fails if the word is understood to mean an embankment raised as part of a road, because then it does give notice of the purpose for which the tax is to be used.

As to the contention that the levee tax, if valid, could be imposed only on property outside incorporated towns, it is sufficient to say in addition to what we said in regard to the bridge tax that when a statute authorizes a tax on the taxable property of the county, which tax is for a proper county purpose, it will be assumed that the intention was to authorize the tax to be imposed upon all the taxable property in the county wherever situated.

Complainants make some contention that the Act of 1927, Ch. 752, Sec. 11, is unconstitutional. We do not think there is anything in this contention, but even if it should be so held, authority for this tax, levees being construed to be a part of the road, could be found in Sec. 2, Chapter 89 of the Public Acts of 1927, which is exactly like Sec. 2, Chapter 479, Public Acts of 1909 under which it was held in Southern R. R. v. Hawkins County, 130 Tenn., 397, that counties had authority to levy a special tax for roads and pikes.

It is objected for defendant that the Chancellor did not charge the complainants interest and penalties on the taxes, to cover which, the money was paid into court when the bills were filed. No objection was made to the decree by the county and no appeal was taken. On September 8, 1928, the money admitted by complainants to

be due and which had been tendered and paid into court was by order of court paid over to the County Trustee, leaving the suit to proceed as to the contested items of taxes. In July, 1927, the rate for general county purposes had been fixed at 22 cents and the rate for good road bonds at 18 cents. In July, 1928, the County Court admitting that it had committed an error in fixing the county tax at 22 cents when it was limited to 20 cents, corrected this and at the same time raised the rate for good road bonds from 18 to 20 cents, so while the bills were filed to contest the extra 2 cents on the 22 cents for county purposes, when the decree was rendered it ' was for the 2 cents due on the good road bonds tax which was not covered by the money paid into court and paid out by the Clerk and Master to the County Trustee. If any interest and penalties were to be claimed, it should have been at the time this money was paid out of court. While it had been properly refused as a tender in full, yet when it was paid into court in admission of what was uncontested and was received by the County Trustee under order of the court, we think it might well be considered as being received by the county in full of all the taxes not contested by complainants, and therefore defendant cannot be heard to complain because the Chancellor decreed interest and penalties only on the amounts which the defendant was entitled to recover when the decree was rendered.

All assignments of error are overruled and the decree of the lower court is affirmed. Complainants and surety on appeal bond will pay costs of appeal.

Owen and Senter, JJ., concur.