IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2017 Session

## GLENN R. FUNK v. SCRIPPS MEDIA, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 16C-333     William B. Acree, Judge**

_____

### No. M2017-00256-COA-R3-CV

_____

A public figure filed a defamation lawsuit against an investigative reporter and a television station based on two news stories that were aired in February 2016. The defendants filed a motion to dismiss, claiming that their reports were constitutionally protected speech, were privileged as a fair and accurate report of pleadings and documents filed in two other lawsuits, and did not contain false or defamatory statements. The plaintiff served interrogatories and requests for documents on the defendants in an effort to discover the defendants' investigative files. The defendants objected on the grounds of relevance and the Tennessee fair report privilege. The plaintiff filed a motion to compel, arguing that he needed the discovery to respond to the defendants' motion to dismiss by uncovering evidence of actual malice. The trial court agreed and granted the motion to compel. The defendants filed an interlocutory appeal of the trial court's decision granting the motion to compel. They argue that (1) actual malice is not an element of the fair report privilege and (2) the trial court erred in granting the plaintiff's motion to compel. We agree with the defendants' position on both issues and reverse the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right and Tenn. R. App. P. 9 Interlocutory Appeal;**
**Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Ronald George Harris, Jon D. Ross, and William J. Harbison, II, Nashville, Tennessee, for the appellants, Scripps Media, Inc. and Phil Williams.

James Douglas Kay, John B. Enkema, and Michael Anthony Johnson, Nashville, Tennessee, for the appellee, Glenn Richard Funk.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Glenn R. Funk is the District Attorney General for Davidson County, Tennessee. Scripps Media, Inc. ("Scripps") owns and operates the television station NewsChannel 5, WTVF in Nashville, and Phil Williams is the station's chief investigative news reporter. NewsChannel 5 broadcast news stories on February 3 and 4, 2016, which are at the center of this case. The news stories reported on allegations the real estate developer David Chase made against several individuals in a civil lawsuit filed in Williamson County and against other individuals and a governmental entity in a federal lawsuit filed in the Middle District of Tennessee. Mr. Funk filed a complaint against Scripps Media, Inc. and Phil Williams (together, "the Defendants") after the first news story aired, and he filed an amended complaint following the second news story to include allegations related to the second story. According to Mr. Funk, the news stories alleged that he extorted money from a criminal defendant, solicited a bribe, and blackmailed a criminal defendant into dismissing a civil lawsuit. When Mr. Funk filed his amended complaint, he served a set of interrogatories, requests for documents, and requests for admission upon each defendant.

The Defendants filed a motion to dismiss the complaint pursuant to Tenn. R. Civ. P. 12.02(6). They claimed the first news story was privileged as a fair and accurate report of allegations made in another lawsuit and did not contain false or defamatory statements about Mr. Funk and that the second news story did not contain any false or defamatory statements about Mr. Funk. The Defendants also moved for a protective order to stay discovery until the trial court ruled on their motion to dismiss. They argued that their motion, if successful, would dispose of all of Mr. Funk's claims against them and that the discovery was not relevant or necessary to resolve the issues raised in their motion to dismiss. Mr. Funk objected to the Defendants' motion to stay discovery, arguing that he needed the discovery to uncover evidence of the Defendants' actual malice. Mr. Funk contended that he could defeat the Defendants' fair report privilege claim with proof that they broadcast their news stories with actual malice. The trial court denied the Defendants' motion for a protective order, but it limited the discovery to facts relating to the two news stories at issue in the complaint.

Scripps and Mr. Williams responded to Mr. Funk's discovery requests, but they objected to providing information they claimed was privileged pursuant to the Tennessee Shield Law, codified at Tenn. Code Ann. § 24-1-208; the First Amendment to the United States Constitution; and Article I, § 19 of the Tennessee Constitution. Mr. Funk then filed a motion to compel. The trial court held a hearing on Mr. Funk's motion to compel on January 13, 2017, and it filed its order granting the motion on February 13, 2017. The trial court ordered the Defendants to answer Interrogatories 7 and 8 and to produce

documents they obtained or relied on in their investigation of the two news stories.[1] The trial court issued its ruling from the bench, which was incorporated by reference into its order. The court explained its decision as follows:

It is not questioned in this case that General Funk is a public official and . . . actual malice is required. Actual malice is defined by the case law, is that -- the fault of actual knowledge that the facts were false or reported with reckless disregard of their truth or falsity.

The plaintiff's claims are based upon defamation -- defamation or implication in a false light. The elements of the false light claim -- the false light, in which the other was placed would be highly offensive to a reasonable person. Second, the actor had the knowledge or acted in reckless disregard as to the falsity of the matter and the false light in which the other would be placed. Thus the actual malice standard applies. The defamation implication may be proved if – may prove defamation if words suggested are found to have a defamatory meaning.

. . . .

The Court finds that the defendants have raised a defense based upon the source. I base that upon the pleadings that have been filed in this case along with the argument of counsel. Thus, the Court finds that, under the Tennessee Shield Law, the defendants have no protection from revealing the source of information. I do not think that that ends the inquiry.

As I stated a moment ago, defamation -- actual malice must be proved under any of the theories that were relied upon by the plaintiff, which is also a factor in the fair report privilege relied upon by the defendant.

---

[1]Interrogatories 7 and 8 that Mr. Funk propounded to Scripps were as follows:

7. Describe all investigation you or your agents or employees conducted regarding the First Story.
8. Describe all investigation you or your agents or employees conducted regarding the Second Story.

Interrogatories 7 and 8 that Mr. Funk propounded to Mr. Williams were as follows:

7. Describe all investigation you conducted regarding the First Story, including all individuals with whom you communicated prior to publication of the First Story.
8. Describe all investigation you conducted regarding the Second Story, including all individuals with whom you communicated prior to publication of the Second Story.

. . . .

> [T]he investigation is highly relevant in this Court's opinion to the issue of malice. And I don't think that it's sufficient for the defendants simply to say "Trust us. We have given you everything which is relevant that we have."

Following the trial court's announcement from the bench that it was granting Mr. Funk's motion to compel, the Defendants filed an application for an interlocutory appeal. The Defendants sought to appeal the trial court's determination that actual malice is relevant to an assertion of the fair report privilege when it is raised as a defense in a defamation action as well as the court's ruling that the information Mr. Funk was seeking to discover is not protected by Tenn. Code Ann. § 24-1-208(a). The Defendants also filed a notice of appeal pursuant to Tenn. R. of App. P. 3 based on Tenn. Code Ann. § 24-1-208(c). That section of the statute provides a right of appeal to the Court of Appeals when a trial court enters an order divesting a newsgatherer of benefits of Tennessee Code Annotated, section 24-1-208 and states that "[t]he execution of or any proceeding to enforce a judgment divesting the protection of this section shall be stayed pending appeal . . . ." Tenn. Code Ann. § 24-1-208(c)(3)(B).

The trial court granted the Defendants' application for an interlocutory appeal, and this Court agreed that this was an appropriate case for an interlocutory appeal. We then consolidated the interlocutory appeal with the appeal the Defendants filed pursuant to Tenn. R. App. P. 3. The issues the Defendants/Appellants raise on appeal relate to the fair report privilege and Tenn. Code Ann. § 24-1-208(b) and are as stated above: whether the trial court erred in (1) concluding that actual malice is an element of the fair report privilege when it is asserted as a defense to a defamation claim, and (2) interpreting Tenn. Code Ann. § 24-1-208(b). Mr. Funk raised an issue regarding this court's subject matter jurisdiction, arguing that the Defendants were not entitled to rely on Tenn. Code Ann. § 24-1-108(c) to file a notice of appeal pursuant to Tenn. R. App. P. 3.

## II. STANDARD OF REVIEW

The trial court's order granting Mr. Funk's motion to compel was a discretionary ruling on a pretrial discovery dispute, which we review using the abuse of discretion standard. *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 503-04 (Tenn. 2010); *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). When making a discretionary decision, a court must consider both the applicable law and the relevant facts. *Beecher*, 312 S.W.3d at 524. A court abuses its discretion when it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Id*. (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). The question whether a newspaper publication is entitled to the fair report privilege is a question of law, *Smith v. Reed*, 944 S.W.2d 623, 624 (Tenn. Ct. App. 1996);

- 4 -

*see Powell*, 312 S.W.3d at 504 (appellate court reviews trial court's legal determinations de novo), which we review de novo, with no presumption of correctness accorded to the trial court's judgment, *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014); *Wells v. Tenn. Bd. of Regents*, 231 S.W.3d 912, 916 (Tenn. 2007).

III. ANALYSIS

A. Actual Malice

The parties do not dispute that Mr. Funk is a public figure or that he must prove actual malice to prevail on his defamation claims. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978); *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 283 (Tenn. Ct. App. 2007). The requirement that a public figure must prove "actual malice" means that he or she cannot prevail on a defamation claim against the media without proof that the statement or report was made with knowledge that it was false or with reckless disregard as to whether it was false or not. *Sullivan*, 376 U.S. at 280; *Verran*, 569 S.W.2d at 441. The parties disagree, however, about whether actual malice is an element of the fair report privilege and whether it is relevant at this stage of the proceedings.

The fair report privilege was first recognized in 1871 by the Tennessee Supreme Court as a defense to a claim of defamation in the case *Saunders v. Baxter*, 53 Tenn. 369 (1871). The Court in that case stated that "a *bona fide* report of the proceedings in a court of justice, in the absence of express malice, is not a libel, though the publication may be injurious to the character of an individual." *Saunders*, 53 Tenn. at 381. Thirty-five years later, the Supreme Court addressed this privilege again and wrote that "[t]he right to publish is subject to the limitation that the report must be a fair one, made in the interest of the public, and without malicious purpose." *Am. Pub. Co. v. Gamble*, 90 S.W. 1005, 1008 (Tenn. 1906). The *Gamble* Court found that the report about court proceedings need not be verbatim, but "[i]t must not give undue prominence to inculpatory facts, and depress or minify such facts as would explain or qualify the former." *Id.* The report "must not omit material points in favor of the complaining party, or introduce extraneous matters of an injurious nature to him." *Id.* The *Gamble* Court further stated:

> In short, the report must be characterized by fair-mindedness, honesty, and accuracy.
>
> If it be found of this character, it is not material that the matter it contains is injurious to the persons involved or referred to therein, since it is of the highest moment that the proceedings of courts of justice should at all times be open to fair inspection, to the end that the public may have the means of knowing how the duties of their officers are performed, whether

- 5 -

faithfully and intelligently or otherwise. In the presence of this public requirement mere private interests must give way.

*Id.* (citations omitted). The privilege has continued to be recognized by later courts. *See, e.g., Langford v. Vanderbilt Univ.*, 318 S.W.2d 568, 574-76 (Tenn. Ct. App. 1958); *Black v. Nashville Banner Pub. Co.*, 141 S.W.2d 908, 912-13 (Tenn. Ct. App. 1939). The Court of Appeals has written that "privilege in the law of libel and slander means privilege to publish defamation without liability." *Langford*, 318 S.W.2d at 574 (citing GATLEY ON LIBEL AND SLANDER 186, 214 (3d ed. 1938); PROSSER , TORTS 606 (2d ed. 1955); WINFIELD ON TORT 333 (6th ed. 1954)). The *Langford* court wrote:

"The law recognizes that there are some occasions on which there ought to be no liability for defamation because the interests of the public, or (exceptionally) those of the individual who originates the defamation, outweigh the plaintiff's right to his reputation. Such occasions are said to be 'privileged.' . . . Whether it exists or not in any given case is a question of law for the judge."

*Id*. (quoting WINFIELD ON TORT 333).

In the case *Smith v. Reed*, this court recognized the importance of the fair report privilege, explaining that it allows news gatherers to "make reports of judicial proceedings to the public, in order that members of the public may be apprised of what takes place in the proceedings without having been present." *Smith*, 944 S.W.2d at 625. The *Smith* court described the privilege as a qualified privilege that is available so long as the report (1) provides a "'correct and just impression of what took place in Court,'" *id*. (quoting *Langford*, 318 S.W.2d at 574), and (2) is balanced and neutral, *id*. The *Smith* court did not address whether actual malice is relevant in determining when the privilege is available.

The Court of Appeals revisited the fair report privilege in *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270 (Tenn. Ct. App. 2007). The court noted that the privilege is a qualified privilege rather than an absolute privilege, and then stated: "In order for the privilege to apply, the report must be 'a fair and accurate summation of the proceeding,' and must display balance and neutrality." *Lewis*, 238 S.W.3d at 284 (quoting *Smith*, 944 S.W.2d at 625). "[A] report of a judicial proceeding will not be shielded by the privilege if it contains any false statement of fact regarding what occurred during the proceeding, any garbled or one-sided account of the proceeding, or any defamatory observations or comments." *Id*. The *Lewis* court recognized that the purpose of the privilege is "to serve the public's interest in being informed of official actions or proceedings that are themselves public" and that this purpose is accomplished "by allowing the media and others to be the eyes and ears of the members of the public who would have been able to

witness the proceeding or obtain the information had they been present to see or hear for themselves." *Id.* at 285. The court continued:

> The privilege enables persons reporting on official actions or proceedings to broadcast, print, post, or now blog about official actions or proceedings without the fear of being subjected to a tort action for fair and accurate reports, even if these reports contain defamatory or embarrassing statements by governmental employees.

*Id.*

The *Lewis* court found that Tennessee's version of the fair report privilege is similar to the privilege described in the Restatement (Second) of Torts § 611 (1977). *Id.* This section of the Restatement provides: "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." RESTATEMENT (SECOND) OF TORTS § 611 (1977). Comment a to § 611 of the Restatement addresses the character of the privilege and explains that "the privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false." *See Lewis*, 238 S.W.3d at 285 (relying on comment a of the Restatement to support the court's statement that the purpose of the privilege is to keep the public informed of official proceedings). This Court affirmed the view espoused by *Lewis* in the case *Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*, 389 S.W.3d 313 (Tenn. Ct. App. 2012). In *Eisenstein*, we wrote:

> [The fair report privilege] applies to "public proceedings or official actions of government that have been made public." *Lewis*, 238 S.W.3d at 285. To qualify for the privilege, "the report must be 'a fair and accurate summation of the proceeding,' and must display balance and neutrality." *Id.* at 284 (quoting *Smith v. Reed*, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996)). The report "will not be shielded by the privilege if it contains any false statement of fact regarding what occurred during the proceeding, any garbled or one-sided account of the proceeding, or any defamatory observations or comments." *Lewis*, 238 S.W.3d at 284.

*Eisenstein*, 389 S.W.3d at 323 (footnote omitted). Neither *Lewis*, *Eisenstein*, nor comment a to the Restatement supports Mr. Funk's position that actual malice is an element of the fair report privilege, as codified in Tenn. Code Ann. § 24-1-208.

Mr. Funk relies on the case *Grant v. The Commercial Appeal*, No. W2015-00208-COA-R3-CV, 2015 WL 5772524 (Tenn. Ct. App. Sept. 18, 2015), to support his argument that the fair report privilege requires the defendants to prove their broadcasts

were not made with actual malice. The court in that case quoted a long passage from *Lewis* and then wrote:

> Accordingly, from *Lewis* and its progeny we gather several factors applicable to the fair report privilege: (1) the report must be of a public proceeding or official actions of government that have been made public; (2) the report must be a fair and accurate summary of the proceedings and must display balance and neutrality; and (3) the report must not be made with actual malice.

*Grant*, 2015 WL 5772524, at *6. It appears that the *Grant* court misconstrued *Lewis* because the *Lewis* court did not mention actual malice as part of its discussion of the fair report privilege.[2] The *Grant* court also cited *Milligan v. United States*, 644 F.Supp.2d 1020 (M.D. Tenn. 2009), in support of the passage quoted above. We have determined, however, that the *Milligan* court misinterpreted Tennessee law by finding that a plaintiff could defeat a media defendant's fair report privilege with proof that the defendant acted with actual malice. *See Milligan*, 644 F.Supp. 2d at 1034.

Recognizing that the fair report privilege has evolved over time, we conclude that under the current state of the law the privilege cannot be defeated by a showing of actual malice by the plaintiff and that the trial court erred when it ruled otherwise. *See Eisenstein*, 389 S.W.3d at 323 n.8 (stating that although the fair report privilege required an absence of malice "at one time," that is no longer the law in Tennessee); *Dotson v. Contemporary Media, Inc.*, No. W2011-01234-COA-R3-CV, 2012 WL 1868255, at *10-11 (Tenn. Ct. App. May 23, 2012) (recognizing that media are entitled to fair report privilege so long as report is fair and accurate summation of proceeding and provides balanced and neutral account) (citing *Smith*, 944 S.W.2d at 625). In light of our holding that actual malice is not a component of the fair report privilege, Mr. Funk cannot defeat the privilege by presenting evidence of actual malice, and the Defendants are not required to show an absence of actual malice in asserting the privilege. If the Defendants can show that the broadcasts and publications at issue were "'a fair and accurate summation of the proceeding[s]'" and that they "display[ed] balance and neutrality," they will be entitled to rely on the fair report privilege as a defense to Mr. Funk's defamation claims. *Lewis*, 238 S.W.3d at 284 (quoting *Smith*, 944 S.W.2d at 625).

---

[2]The *Lewis* court recognized that actual malice is a component of a defamation claim asserted by a public figure, *Lewis*, 238 S.W.3d at 289-96, but the court did not conflate the elements of a defamation claim with the elements of the fair report privilege defense, as the *Grant* court appears to have done.

B.  The Effect of Tenn. Code Ann. § 24-1-208(b)

We now consider whether the trial court erred in its interpretation of Tenn. Code Ann. § 24-1-208(b).  In their motion to dismiss, the Defendants set forth the basis for their news stories.  They stated that the first story was based on allegations contained in two complaints filed by David Chase, one in the Circuit Court of Williamson County, and the other in the district court for the Middle District of Tennessee, as well as deposition testimony and documents that Mr. Chase filed in connection with his lawsuit filed in the Williamson County court.  The Defendants asserted that the facts set forth in the second news story were true and not in dispute.

The trial court found that the Defendants were not entitled to rely on Tenn. Code Ann. § 24-1-208(a)[3] because they "raised a defense based upon the source." That defense was, of course, the fair report privilege. The Shield Law exempts "the source of any allegedly defamatory information" from nondisclosure when a defendant relies on a source for the publication or broadcast:

> (b) Subsection (a) shall not apply with respect to the source of any
> allegedly defamatory information in any case where the defendant in a civil
> action for defamation asserts a defense based on the source of such
> information.

Tenn. Code Ann. § 24-1-208.  This section of the statute has not been interpreted or applied by any courts in Tennessee.[4]  When interpreting a statute, we look at the plain meaning of the words used.  "'The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Friedmann v. Marshall Cnty., Tenn.*, 471 S.W.3d 427, 433 (Tenn. Ct. App. 2015) (quoting *Mills v. Fulmarque, Inc.* 360 S.W.3d 362, 368 (Tenn. 2012)).  Because words used in a statute "are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citing *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *State ex rel. Comm'r of Transp. v. Med. Bird Black Bear White Eagle*,

---

[3] Tenn. Code Ann. § 24-1-208(a) states:

> A person engaged in gathering information for publication or broadcast connected with or
> employed by the news media or press, or who is independently engaged in gathering information
> for publication or broadcast, shall not be required by a court, a grand jury, the general assembly, or
> any administrative body, to disclose before the general assembly or any Tennessee court, grand
> jury, agency, department, or commission any information or the source of any information
> procured for publication or broadcast.

[4]This section was mentioned in *Moman v. M.M. Corp.*, No. 02A01-9608-CV-00182, 1997 WL 167210, at
*2 (Tenn. Ct. App. Apr. 10, 1997), but the Court of Appeals did not explain how it was to be applied.

63 S.W.3d 734, 754-55 (Tenn. Ct. App. 2001); *N.C. & St. L. Ry. v. Carroll Cnty.*, 12 Tenn. App. 380, 387 (1930)). Courts are directed to harmonize any conflicting provisions and to "constru[e] each provision consistently and reasonably." *Id.* (citing *Hill v. City of Germantown*, 31 S.W.3d 234, 238 (Tenn. 2000), and *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005)). "The courts' goal is to construe a statute in a way that avoids conflict and facilitates the harmonious operation of the law." *Id.* (citing *Frazier v. E. Tenn. Baptist Hosp., Inc.*, 55 S.W.3d 925, 928 (Tenn. 2001), and *In re Audrey S.*, 182 S.W.3d 838, 869 (Tenn. Ct. App. 2005)).

We find that the trial court's construction of subsection (b) of the statute results in the exemption's swallowing up the protection that subsection (a) provides to media defendants whenever disclosure of a source is sought. In most, if not all, cases, a news gatherer is going to rely on a "source of information" as the basis for his or her publication or broadcast. According to the trial court's ruling, any time a news gatherer defends a defamation claim by invoking the fair report privilege, the news gatherer loses the entire protection provided under section (a) of the Shield Law and must disclose every source collected, whether used in the story or not. We believe a better interpretation would be to allow a media defendant to assert the fair report privilege while also subjecting to disclosure only the sources the media defendant identifies as the basis for the story. In other words, once a news gatherer asserts the fair report privilege, the protections of section (a) of the Shield Law come into play to protect sources. To the extent that under the fair report privilege the news gatherer must indicate the source of the news report, that source loses its protected status under section (b) of the Shield Law and must be disclosed. If "the source of any allegedly defamatory information" is one or more documents, the document(s) must be produced to the claimant. This is the only way a court can compare the alleged source with the publication or broadcast to determine whether the news gatherer is, in fact, entitled to assert the fair report privilege as a defense to the claim for defamation, *i.e.*, whether the publication or broadcast was a fair and accurate report of the proceeding or document and whether the report was balanced and neutral.

Other than the person or document(s) the news gatherer identifies as the source(s) of his or her publication or broadcast, however, section (a) of the Shield Law protects the news gatherer from having to produce any other information or documents from his or her investigative files. The trial court's order granting Mr. Funk's motion to compel the Defendants to describe their investigations and produce all documents they obtained or relied on in their investigations of the two news stories is contrary to this interpretation of the statute. Thus, we find the trial court erred when it granted Mr. Funk's motion to compel.[5]

---

[5]If, upon remand, the trial court determines that the story is not a fair and accurate report or that it was not balanced or fair, the Defendants will be unable to rely on the privilege.

Mr. Funk conceded at oral argument that there was no longer an issue regarding this court's subject matter jurisdiction in light of the fact that we granted the Defendants' request for an interlocutory appeal. Thus, we will not address whether the Defendants were entitled to rely on Tenn. Code Ann. § 24-1-208(c) as a basis for appealing the trial court's order granting Mr. Funk's motion to compel. *See Alcoa, Inc. v. Tenn. State Bd. of Equalization*, No. E2010-00001-COA-R3-CV, 2011 WL 598435, at *7 (Tenn. Ct. App. Feb. 18, 2011) (declining to address issues not necessary to ultimate decision); *Harris v. B & T Distrib. Co.*, No. 732, 1987 WL 26209, at *2 (Tenn. Ct. App. Dec. 8, 1987) (stating that the court is not expected to decide issues that are not determinative of the result).

IV. CONCLUSION

The judgment of the trial court is reversed and remanded in accordance with this opinion. Costs of this appeal shall be assessed against the appellee, Glenn. R. Funk, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE