# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### May 7, 2019 Session

## PATRICIA RANDOLPH v. WHITE COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for White County**
**No. CC2880          Larry B. Stanley, Jr., Judge**

_____

### No. M2018-01496-COA-R3-CV

_____

A mother brought suit against White County and its Sheriff for negligent infliction of emotional distress arising out of a situation in which the Sheriff erroneously informed the mother that her son had been shot and killed by deputies. The trial court dismissed the suit, ruling that the Sheriff was immune from suit under the Governmental Tort Liability Act and White County was immune from suit by application of the public duty doctrine. Mother appeals, asserting that neither defendant is immune from suit. Finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Richard M. Brooks, Carthage, Tennessee, for the appellant, Patricia Randolph.

Michael T. Schmitt, Nashville, Tennessee, for the appellees, White County, Tennessee, and Oddie Shoupe, White County Sheriff.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY[1]

On April 13, 2017, White County Sheriff's deputies and Sparta police officers were involved in a high-speed chase of a pickup truck on Highway 111; the pursuit ended

---

[1] The factual history is taken from the allegations of the complaint. The trial court resolved this case on Defendants' Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim for relief; in ruling on such a motion, the court takes the allegations of the complaint as true. *See Pursell v. First American National Bank*, 937 S.W.2d 838, 840 (Tenn. 1996); *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002).

when the deputies shot and killed the driver, who had been identified by Dekalb County 911 dispatch as Michael Dial. Heather Ramsey, daughter of Patricia Randolph, the plaintiff in this case, received a call from one of her friends telling her that a post on social media stated that Ms. Randolph's son, Jason Kirby, was the driver who had been killed; Ms. Ramsey conveyed this information to Ms. Randolph. Ms. Randolph then went to the hospital to find out what had happened to her son; on the way to the hospital, she came upon the scene of the shooting. Upon her arrival, the Sheriff of White County, Oddie Shoupe, called Ms. Randolph over to where he was and told her that her son had fired at his deputies and they had to "take him out." Ms. Randolph continued to the hospital, where hospital personnel confirmed that it was her son who had been killed. While at the hospital, however, Ms. Randolph received a call from her ex-husband, who told her that there had been a mistake and that her son had not been killed. At some point, Jason Kirby learned of the report that he had been killed and went to his mother's home to show her that he was alive.

On April 12, 2018, Ms. Randolph filed suit against White County and Sheriff Shoupe, individually and in his official capacity, pursuant to the Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated section 29-20-101, *et seq.*, and common law, to recover for negligent infliction of emotional distress. The defendants moved pursuant to Tennessee Rule of Civil Procedure 12.02(6) to dismiss the suit, contending that White County was immune from suit by application of the public duty doctrine and that Sheriff Shoupe was entitled to immunity under section 29-20-310(b) and by application of the public duty doctrine. Ms. Randolph responded, contending that the public duty doctrine did not immunize White County from suit because the special duty exception to the doctrine applied; she conceded that Sheriff Shoupe was immune from suit in his official capacity but argued that he could be held liable in his individual capacity.

At the hearing on the motion to dismiss, Ms. Randolph orally moved that she be allowed to take discovery before the court ruled on the motion to dismiss; the court denied the motion. The court granted Defendants' motion and dismissed the suit, ruling that: White County's immunity from suit had been removed by section 29-20-205(2) of the GTLA and that, as a consequence, by application of section 29-20-310(b), no claim could be brought against Sheriff Shoupe; and, White County was immune from suit pursuant to the public duty doctrine.

Ms. Randolph appeals, presenting the following issues for review:

1. Whether the trial court erred in granting Defendant White County, Tennessee, immunity pursuant to the common law public duty doctrine.

2. Whether the trial court erred in finding that the special duty exceptions to the public duty doctrine do not apply, thus retaining immunity for

Defendant, White County, Tennessee, under the common law public duty doctrine.

3. Whether the trial court erred in granting the Defendant Oddie Shoupe, in his individual capacity, immunity pursuant to the Tennessee Governmental Tort Liability Act.

4. Whether the trial court erred in denying Plaintiff's oral motion for discovery.

## II. STANDARD OF REVIEW

The purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted; such a motion only challenges the legal sufficiency of the complaint. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). It does not challenge the strength of the plaintiff's proof. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). In reviewing a motion to dismiss, we must liberally construe the complaint, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See Pursell v. First American National Bank*, 937 S.W.2d 838, 840 (Tenn. 1996); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002). Thus, a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). Making such a determination is a question of law. *Burks v. Savannah Indus. Dev. Corp. of the City of Savannah Tennessee*, No. W2018-00166-COA-R3-CV, 2018 WL 5307091, at *1 (Tenn. Ct. App. Oct. 24, 2018) ("the scope of review after the grant or denial of a motion to dismiss involves a question of law") (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002)). Our review of a trial court's determinations on issues of law is *de novo*, with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Center, P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

## III. ANALYSIS

### A) The County's Immunity

The GTLA is premised on article I, section 17, of the Tennessee Constitution, which provides that suits against the State "may only be brought 'in such manner and in such courts as the Legislature may by law direct.'" *Vaughn v. City of Tullahoma*, No. M2015-02441-COA-R3-CV, 2017 WL 3149602, at *1 (Tenn. Ct. App. July 21, 2017)

3

(quoting Tenn. Const. art. I, § 17).  The GTLA codified the common law rule that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities." Tenn. Code Ann. § 29-20-201(a).  Subject to exceptions not applicable in this action, section 205 removes the immunity granted in section 201(a) in cases where the injury was "proximately caused by the negligent act or omission of any employee within the scope of his employment"; the parties do not dispute that White County's immunity is removed by section 205.[2]

Notwithstanding the effect of the GTLA, White County argued, and the trial court agreed, that it was nevertheless immune from suit by application of the public duty doctrine, which is "a common law affirmative defense that . . . provides immunity to public employees [and governmental entities] from suits for injuries that are caused by their breach of a duty owed to the public at large." *Karnes v. Madison County*, No. W2009-02476-COA-R3-CV, 2010 WL 3716458, *2 (Tenn. Ct. App. Sept. 23, 2010) (internal citations and footnote omitted).[3]  The doctrine was explained in *Karnes*:

> "Succinctly stated, the [public duty] doctrine provides that private citizens cannot maintain an action against public officials or entities unless they are able to allege a special duty not owed to the public generally." *Hurd v. Flores,* 221 S.W.3d at 28. "In Tennessee, it has long been held that a plaintiff must show the existence of a duty particular to him or her, as distinct from a duty owed to the public in general." *Wells* [*v. Hamblen Cnty.*], [No. E2004-01968-COA-R3-CV,] 2005 WL 2007197, at *3 [(Tenn. Ct. App. Aug. 22, 2015)]. In other words, under the public duty doctrine, "a duty owed to everyone is a duty owed to no one." *Brown v. Hamilton County,* 126 S.W.3d 43, 48 (Tenn. Ct. App. 2003). However, an exception to the public duty doctrine's rule of no-liability applies "where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Ezell* [*v. Cockrell*]*,* 902 S.W.2d [394] at 401 [(Tenn. Ct. App. 1995)]. In Tennessee, a "special duty" of care exists when:

---

[2] The Complaint asserted a cause of action for negligent infliction of emotional distress.  Tennessee Code Annotated section 29-20-205(2) contains an exception from the removal of immunity for an injury which arises out of "infliction of mental anguish."  This exception does not apply in this case, however, inasmuch as our Supreme Court has held that the term "infliction of mental anguish" in the GTLA only applies to the tort of intentional infliction of emotional anguish*.  See Sallee v. Barrett,* 171 S.W.3d 822, 829 (Tenn. 2005).

[3] The footnote, which we have omitted from the quoted portion of the *Karnes* opinion, acknowledges that the public duty doctrine "[w]hile …couched in terms that appear to provide protection to individual employees, . . . has been applied to shield governmental entities from liability as well." 2010 WL 3716458, at *2 n.3 (citing *Hurd v. Flores*, 221 S.W. 3d 14, 27 (Tenn. Ct. App. 2006)).

1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking;

2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or

3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id.* at 402. The focus of the "special duty" exception is on the relationship between the parties. *Matthews* [*v. Pickett Cnty.*]*,* 996 S.W.2d [162,] 165 [(Tenn. 1999)]. "If a special relationship does exist, the public duty doctrine defense is negated, and immunity conferred by the doctrine is removed." *Id.*

*Id.* at \*3 (footnote omitted).

The trial court held, and Ms. Randolph does not contest, that "the public duty doctrine extends to allegations that a County and its employees breached its duty to conduct a reasonable investigation," and that "[a]n officer's obligation to conduct a reasonable investigation is a duty owed to the public at large and therefore the public duty doctrine protects officers from having to defend suits brought for violating this public duty." Ms. Randolph argues that the first and third exceptions set forth in *Ezell* apply in this case, and accordingly, the trial court erred in dismissing her suit against White County.

Relative to the first exception, the trial court held that "[t]he Plaintiff's Complaint does not allege that Sheriff Shoupe affirmatively undertook to protect her and that she relied upon any such offer of protection. Therefore, the first special duty exception does not apply." Ms. Randolph asserts that the first exception applies because "Sheriff Shoupe affirmatively took charge of [her] and created a special duty relationship when he singled her out on the highway, intentionally motioned her over to him at the scene of the shooting, and told her his deputies killed her son."

We have determined that the following paragraphs of the complaint are pertinent to the first exception:

7.  On the afternoon of April 13, 2017 around 5:00 p.m. Plaintiff was at her home in White County, Tennessee.

5

***

16. . . . Plaintiff came upon the scene where the shooting occurred on Highway 111.

17. Defendant Shoupe motioned the Plaintiff over to the median.

18. Plaintiff approached Defendant Shoupe.

19. Defendant Shoupe told Plaintiff that her son had fired a weapon at his deputies and they had to "take him out".

***

21. Defendant Shoupe told Plaintiff to go to the hospital.

***

27. Around 8:30 p.m., the medical examiner called the Plaintiff's home and asked for Plaintiff to come identify her son's body at the hospital.

***

29. Defendant Shoupe, who was with the medical examiner, got on the phone to speak with Jason Kirby.

30. Jason Kirby told Defendant Shoupe he needed to apologize to his mother for the emotional suffering she experienced after being told her son was killed.

31. Defendant Shoupe said he could not apologize and to have Mrs. Randolph call him.

Accepting these allegations as true, we conclude that they do not support the application of the first special duty exception. The only action alleged to have been taken by Sheriff Shoupe was to motion with his hand for Ms. Randolph to approach him, an action that does not indicate that the Sheriff was undertaking to protect Ms. Randolph but rather that he wished to speak with her. We do not agree with Ms. Randolph that, by making that hand motion, Sheriff Shoupe undertook to protect her from erroneous information or the emotional trauma that might result from the receipt of the erroneous information.

6

Ms. Randolph also asserts that the third special duty exception applies; she argues in her brief that "[m]otioning over a mother at the scene of an accident and informing her that her child was killed by deputies, prior to confirming the identification of the deceased, when other emergency personnel previously correctly identified the deceased," is reckless misconduct "that falls under the third exception of the public duty doctrine." We have defined reckless misconduct as occurring "when a person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Gardner v. Insura Prop. & Cas. Ins. Co.*, 956 S.W.2d 1, 3 (Tenn. Ct. App. 1997) (citing *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn. 1992)). Although Plaintiff's complaint did not use the term "reckless," we will look to the facts alleged to determine whether she states a claim upon which relief could be granted. *Karnes*, 2010 WL 3716458, at *6.

In addition to the allegations from the Complaint cited above, additional factual allegations that form the basis for this argument are:

> 9.  Dekalb County 911 dispatch had previously identified the driver of the pick-up truck as Michael Dial.
>
> ***
>
> 12. Despite the prior identification of the driver by Dekalb County 911 dispatch, White County Sheriff's deputies and Sheriff Oddie Shoupe incorrectly identified the deceased as Jason Kirby, son of the Plaintiff.

The complaint does not allege that Sheriff Shoupe acted with bad intent or malice or was otherwise derelict in the exercise of his duty.[4] Further, there are no allegations that Sheriff *knew* about the danger of incorrectly identifying the decedent *and* that he consciously disregarded that risk. The salient allegations state that the Sheriff incorrectly identified the decedent and informed Ms. Randolph of the identification; on the record presented, the allegations establish that Sheriff Shoupe's conduct was negligent, but do not show a "gross deviation from the standard of care that an ordinary person would

---

[4] This Court found reckless conduct in a case in which a person charged with several felonies was released as part of a misdemeanor pre-trial release program; the rules of which he violated multiple times, with impunity, until he shot and killed someone while awaiting trial. *Brown v. Hamilton Cty.*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003). The family of the shooting victim brought suit against Hamilton County. This Court concluded that the third special duty exception was implicated because "[t]he preponderance of evidence in the record points to extreme dereliction by the County in the operation of its program, and such neglect of duty substantially and unjustifiably increased the risk that harm would occur." *Id.* at 50.

7

exercise under all the circumstances." [5] *Gardner*, 956 S.W.2d at 3. Thus, the third special duty exception cannot apply.

In conclusion, we hold that the allegations of the Complaint do not support the application of the first or third special duty exception. Accordingly, because the public duty doctrine applies and the special duty exceptions do not, the County was immune and the motion to dismiss was properly granted as to the County.

### B) Sheriff Shoupe

The trial court held that, because White County's immunity had been removed by Tennessee Code Annotated section 29-20-205(2), section 310(b)[6] precluded suit against Sheriff Shoupe. Ms. Randolph argues that, while Sherriff Shoupe might be immune from suit in his official capacity, he is not immune from suit in his individual capacity, citing section 29-20-310(b) and (c)[7] and asserting that when a municipality "is immune, claims against an individual employee are not barred, they are limited."

Resolution of this issue involves the interpretation of statutes, which is a question of law, and thus we review the trial court's decision *de novo*, without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). When interpreting a statute, we must look to well-settled rules of statutory construction:

---

[5] In *Karnes v. Madison County*, this Court considered a complaint which alleged that an inmate "awoke 'with symptoms of a serious eye infection,' including swelling and the secretion of pus," requested treatment, and was ignored. No. W2009-02476-COA-R3-CV, 2010 WL 3716458, at *6 (Tenn. Ct. App. Sept. 23, 2010). This Court held that these allegations were sufficient to permit a finding that the sheriff's deputies from whom treatment was requested ignored a substantial and unjustifiable risk. *Id.* Again, the complaint at issue here does not allege facts that would support a finding that Sheriff Shoupe knew there was a risk that the decedent had been misidentified as Ms. Randolph's son.

[6] Section 29-20-310(b) provides in pertinent part:

> No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner.

[7] Section 29-20-310(c) states in pertinent part:

> No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, unless the act or omission was willful, malicious, criminal, or performed for personal financial gain…

When courts are called upon to construe a statute, their goal is to give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope. *Larsen–Ball v. Ball,* 301 S.W.3d 228, 232 (Tenn. 2010); *In re Estate of Tanner,* 295 S.W.3d 610, 613 (Tenn. 2009). Because the legislative purpose is reflected in a statute's language, the courts must always begin with the words that the General Assembly has chosen. *Waldschmidt v. Reassure Am. Life Ins. Co.,* 271 S.W.3d 173, 176 (Tenn. 2008). Courts must give these words their natural and ordinary meaning. *Hayes v. Gibson County,* 288 S.W.3d 334, 337 (Tenn. 2009). And because these words are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose. *State v. Flemming,* 19 S.W.3d 195, 197 (Tenn. 2000); *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle,* 63 S.W.3d 734, 754–55 (Tenn. Ct. App. 2001); *N. C. & St. L. Ry. v. Carroll County,* 12 Tenn. App. 380, 387, 1930 WL 1711, at *5 (1930).

When a statute's text is clear and unambiguous, the courts need not look beyond the statute itself to ascertain its meaning. *Green v. Green,* 293 S.W.3d 493, 507 (Tenn. 2009); *State v. Strode,* 232 S.W.3d 1, 9–10 (Tenn. 2007).

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526-27 (Tenn. 2010) (footnote omitted).

In *Erwin v. Rose*, this Court addressed a situation in which a Maury County Sheriff's deputy engaged in a high speed chase, lost control of his vehicle, and collided into a car being driven by someone not involved in the chase, killing the driver of that vehicle. 980 S.W.2d 203, 205 (Tenn. Ct. App. 1998). The driver's family filed a wrongful death suit against Maury County, the Maury County Sheriff, the Deputy, and the driver of the car being chased. *Id.* The trial court granted summary judgment to the Sheriff and dismissed him from the suit; found Maury County liable in the amount of the sheriff's bond; and dismissed the claim against the deputy under Tennessee Code Annotated section 29-20-310. *Id.* The family appealed, arguing that the Deputy was personally liable because his actions were willful. *Id.* On appeal, we stated that section 310(b) "should be read in conjunction with" section 310(c). *Id.* at 206. Doing so, we concluded:

Reading the two sections together, it is obvious that the legislature wished to limit the exposure of municipal employees while it selectively removed the immunity of the municipality itself. It did so in two ways: (1) by giving the employee absolute immunity in cases where the municipality's immunity was removed (subsection (b)), and (2) by limiting the employee's liability in cases in which the municipality was yet immune to the limits in

9

Tenn. Code Ann. § 29-20-403—unless the employee's acts were willful, malicious, criminal, or performed for personal financial gain (subsection (c)).

*Id.* We then held that the Deputy in that case had "absolute immunity for the acts that led to the county's liability." *Id.* (also holding that "the trial judge acted correctly in dismissing Deputy Rose, whether his actions under the circumstances could be labeled willful or not"); *see also Pinnix v. Pollock*, 338 F. Supp. 2d 885, 891 n.3 (W.D. Tenn. 2004) (concluding that "[p]ursuant to the [GTLA], [a Lexington, Tennessee police officer] could not be held liable for negligence in his individual capacity" under section 310(b)). In *Hill v. City of Germantown*, our Supreme Court, in deciding a similar issue, agreed with this Court's analysis in *Erwin* and held, for a suit in which the City of Germantown had its immunity removed under section 205, that "no judgment [could] be rendered against" the police officer involved in the accident giving rise to the suit. 31 S.W.3d 234, 238 (Tenn. 2000).

The trial court did not err in holding that that Sheriff Shoupe is immune from suit in his individual and official capacity.

### C) Motion for Discovery

Ms. Randolph contends that the trial court erred in denying her oral motion to conduct discovery, asserting that "discovery is required to reveal the facts and information needed to cure deficiencies in the complaint." We respectfully disagree. As noted by the court when the motion was argued, the issues presented by the motion related to the immunities, if any, applicable to the County and Sheriff Shoupe. As we have discussed earlier, the resolution of those issues are in large part matters of statutory interpretation; the allegations of the complaint have been accepted as true and are sufficient to resolve the legal issues presented by the motion.

### IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

_____

RICHARD H. DINKINS, JUDGE

10